**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **BRIAN NEWMAN AS INDEPENDENT** | § | |
| **ADMINISTRATOR OF THE ESTATE OF** | § | |
| **TORRY LAMONT NEWMAN,** | § | |
| **DECEASED, LATOSHA NEWMAN,** | § | |
| **JOYCE NEWMAN, NATORI NEWMAN,** | § | |
| **TEVIN NEWMAN, AND SHATORRY** | § | |
| **NEWMAN, INDIVIDUALLY,** | § | |
| | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO.** |
| | § | |
| **v.** | § | **JURY DEMANDED** |
| | § | |
| **SMITH COUNTY, TEXAS; SHERIFF** | § | |
| **LARRY R. SMITH, JOHN SHOEMAKER;** | § | |
| **MARIA VALLEJO-ROBLES; NICHOLAS** | § | |
| **LEE VEGA; NORALI VELAQUEZ; TRE** | § | |
| **KOBE WASHINGTON; AND JOHN DOE** | § | |
| **SMITH COUNTY JAILERS 1-20, IN** | § | |
| **THEIR INDIVIDUAL CAPACITIES;** | § | |
| **TURN KEY HEALTH CLINICIANS,** | § | |
| **PLLC; TURN KEY HEALTH CLINICS,** | § | |
| **LLC; MARIA DIMACULANGA; KELLY** | | |
| **NICHOLE ELLIS; and JOHN DOE** | | |
| **MEDICAL PROVIDERS 1-5,** | | |
| | | |
| **Defendants.** | | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

> This is a case of a tragic denial of medical care desperately needed by Torry Lamont Newman, who was incarcerated at Smith County Jail. Smith County Jailers ignored Mr. Newman's pleas for help. Jail medical staff ignored hospital lab results indicating critical need for emergency treatment. Torry Lamont Newman sat in a jail cell suffering from a life-threatening critical condition that was known to jailers, supervisors and jail medical staff.  It was only after Torry Lamont Newman suffered for hours and died lying on the floor in a separation cell that an ambulance was called, but it was too late.  Defendants' deliberate indifference and objective unreasonableness caused Torry Lamont Newman's unnecessary death.

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiffs file this complaint and for cause of action will show the following:

## I. JURISDICTION AND VENUE

1.      The court has original subject matter jurisdiction over claims brought under the Civil Rights Act of 1871 pursuant to 28 U.S.C. §§ 1331 and 28 U.S.C § 1343 (3) and (4), and 29 U. S. C. § 1367, because this suit presents a federal question and seeks relief pursuant to federal statutes providing for the protection of civil rights. This suit arises under the United States Constitution and federal statutes including but not necessarily limited to 42 U.S.C. § 1983.

2.      Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Texas and seeks recovery under the Wrongful Death and Survival Statutes of the State of Texas as allowed by law.[1]

3.      The jurisdiction of this court is invoked to secure protection of and to redress deprivation of rights secured by the U.S. Constitution under the Eighth and Fourteenth Amendments of the U.S. Constitution, as made applicable to the States through the Fourteenth Amendment, and by the Civil Rights Act of 1964, and  42 U.S.C §1983 and § 1985 ensuring due process, and providing for the equal protection and rights of all persons in every state and territory within the jurisdiction of the United States.

---

[1] *See Rodgers v. Police*, 819 F.3d 205, 208 (5th Cir. 2016) (holding "Federal civil-rights laws extend federal-question jurisdiction by incorporating state wrongful-death statutes. Thus, an individual may bring a claim under federal civil-rights laws through Texas's wrongful-death statute"); *Rhyne,*973 F.2d at 390 ("This court held that 42 U.S.C. § 1988 incorporated both [the state's] survival statute and [the] wrongful death statute to provide full remedies for violations of constitutional rights.").

4.      The court has personal jurisdiction over Smith County because it is a Texas county.  The court has personal jurisdiction over the natural person Defendants because they reside and are domiciled in, and are citizens of, Texas.

5.      Venue is proper in the Marshall Division of the United States District Court for the Eastern District of Texas, pursuant to 28 U.S.C. § 1391(b)(1), because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in Smith County in the Eastern District.

## II. PARTIES

6.      Plaintiffs LaTosha Newman, Joyce Newman, NaTori Newman, Tevin Newman, and ShaTorry Newman, bring this suit individually and as heirs of Torry Lamont Newman; and Brian Newman as representative of the Estate of Torry Lamont Newman. LaTosha Newman is the wife of Torry Lamont Newman. Joyce Newman is the mother of Torry Lamont Newman. NaTori Newman, Tevin Newman, ShaTorry Newman, are the heirs of Torry Lamont Newman, and Brian Newman is the Independent Administrator of the Estate of Torry Lamont Newman.

7.      Torry Lamont Newman, the decedent, was at all times a citizen of the United States and died intestate. This lawsuit is brought by Brian Newman as representative of the Estate of Torry Lamont Newman pursuant to the Texas Probate Code.

8.      Torry Lamont Newman died in Smith County. Brian Newman brings this action in his fiduciary capacities.

9.      Plaintiff Joyce Newman is a natural person who resides and did reside, and was domiciled, in Texas at all relevant times. Joyce Newman was Torry Lamont Newman's mother. Joyce Newman sues in her individual capacity as a wrongful death beneficiary under

Texas law.

10.     Plaintiff LaTosha Newman is a natural person who resides and did reside, and was domiciled, in Texas at all relevant times. LaTosha Newman was Torry Lamont Newman's wife. LaTosha Newman sues in her individual capacity as a wrongful death beneficiary under Texas law and as a natural heir of the Estate of Torry Lamont Newman.

11.     Plaintiff NaTori Newman is a natural person who resides and did reside, and was domiciled, in Texas at all relevant times. NaTori Newman was Torry Lamont Newman's daughter.  NaTori Newman sues in her individual capacity as a wrongful death beneficiary under Texas law and as a natural heir of the Estate of Torry Lamont Newman.

12.     Plaintiff ShaTorry Newman is a natural person who resides and did reside, and was domiciled, in Texas at all relevant times. ShaTorry Newman was Torry Lamont Newman's daughter. ShaTorry Newman sues in her individual capacity as a wrongful death beneficiary under Texas law and as a natural heir of the Estate of Torry Lamont Newman.

13.     Plaintiff Tevin Newman is a natural person who resides and did reside, and was domiciled, in Texas at all relevant times. Tevin Newman was Torry Lamont Newman's son. Tevin Newman sues in his individual capacity as a wrongful death beneficiary under Texas law and as a natural heir of the Estate of Torry Lamont Newman.

14.     Defendant Smith County, Texas ("Smith County" or the "County") is a Texas county.  Pursuant to Federal Rules of Civil Procedure 4(j)(2), Defendant Smith County may be served with process by delivering summons and original complaint to its chief executive officer, Honorable County Judge Neal Franklin Hale, at 200 E. Ferguson, Suite 100, Tyler, Texas 75702, or wherever he may be found.  Service of such person is also consistent with the manner prescribed by Texas law for serving summons or like process on a county as a

Defendant, as set forth in Texas Civil Practice and Remedies Code Section 17.024(a).

15.     Defendant, Sheriff Larry R. Smith (the "Sheriff") is and was at all times relevant to this action the duly elected Sheriff of Smith County, Texas. He is employed by Smith County as Sheriff of the Smith County Sheriff's Office. He is a county policy maker with respect to policies and procedures at the Smith County Jail.   He is being sued in his individual and official capacity. The Sheriff is and was, at all relevant times responsible for creating, adopting, approving, ratifying, maintaining, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Smith County Sheriff's Office and the Smith County Jail. The Sheriff at all relevant times acted under color of State law. He may be served with process at the Smith County Sheriff's Office located at 227 N. Spring Avenue, Tyler, Texas 75702.

16.     Defendant John Shoemaker ("Shoemaker") is the Lieutenant Jailer at the Smith County Jail.  Defendant Shoemaker at all relevant times acted under color of State law. Defendant Shoemaker may be served with process at the Smith County Sheriff's Office located at 227 N. Spring Avenue, Tyler, Texas 75702 or wherever he may be found.

17.     Defendant Maria Vallejo-Robles ("Vallejo-Robles") was a jailer and sergeant at the Smith County Jail who was in contact with Mr. Newman in the days leading up to Mr. Newman's death.  Defendant Vallejo-Robles acted at all relevant times under color of State law. Defendant Vallejo-Robles may be served with process at the Smith County Sheriff's Office located at 227 N. Spring Avenue, Tyler, Texas 75702 or wherever she may be found.

18.     Defendant Nicholas Lee Vega ("Vega") was a jailer at the Smith County Jail who was in contact with Mr. Newman in the days leading up to Mr. Newman's death. Defendant Vega acted at all relevant times acted under color of State law. Defendant Vega

may be served with process at the Smith County Sheriff's Office located at 227 N. Spring Avenue, Tyler, Texas 75702 or wherever he may be found.

19.     Defendant Norali Velaquez ("Velaquez") was a jailer at the Smith County Jail who was in contact with Mr. Newman in the days leading up to Mr. Newman's death. Defendant Velaquez acted at all relevant times under color of State law. Defendant Velaquez may be served with process at the Smith County Sheriff's Office located at 227 N. Spring Avenue, Tyler, Texas 75702 or wherever she may be found.

20.     Defendant Tre Kobe Washington ("Washington") was a jailer at the Smith County Jail who was in contact with Mr. Newman in the days leading up to Mr. Newman's death.  Defendant Washington acted at all relevant times under color of State law. Defendant Velaquez may be served with process at the Smith County Sheriff's Office located at 227 N. Spring Avenue, Tyler, Texas 75702 or wherever he may be found.

21.     The County is a proper defendant under 42 U.S.C. § 1983. Although the County has privatized the provision of healthcare services in the jail, it has a non-delegable duty under 42 U.S.C. § 1983 to provide constitutionally adequate care, cannot contract away its constitutional obligation, and is legally liable for the challenged deliberately indifferent polices, practices, customs, and training implemented by such private contractors.

22.     Defendant Turn Key Health Clinicians, PLLC, ("Turn Key Clinicians"), is a private for-profit correctional healthcare corporation based in Oklahoma and doing business in Texas. Turn Key Clinicians is considered a "person" for purposes of 42 U.S.C. § 1983. At all relevant times Turn Key Clinicians acted pursuant to a contract with Smith County to provide necessary medical and mental health services to people confined at the Smith County Jail. Turn Key Clinicians was responsible for adopting, implementing and enforcing policies

pertaining to medical and mental health care for people confined at the jail. It was responsible for ensuring that the care provided to those people met minimum constitutional standards and for ensuring that its staff and contractors were adequately trained to provide care that met those standards. The entity may be served with process at CT Corporation System located at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

23.    Defendant Turn Key Health Clinics, PLLC, ("Turn Key Clinics"), is a private for-profit correctional healthcare corporation based in Oklahoma and doing business in Texas. Turn Key Clinics is considered a "person" for purposes of 42 U.S.C. § 1983. At all relevant times Turn Key Clinics acted pursuant to a contract with Smith County to provide necessary medical and mental health services to people confined at the Smith County Jail. Turn Key Clinics was responsible for adopting, implementing and enforcing policies pertaining to medical and mental health care for people confined at the jail. It was responsible for ensuring that the care provided to those people met minimum constitutional standards and for ensuring that its staff and contractors were adequately trained to provide care that met those standards. The entity may be served with process at InCorp Services, Inc. located at 815 Brazos St., Ste. 500, Austin TX 78701.

24.    Defendants Turn Key Health Clinics, LLC and Turn Key Health Clinicians, PLLC, are collectively referred to as "Turn Key" or the "Turn Key Defendants."

25.    The Turn Key Defendants are proper entities to be sued under 42 U.S.C. § 1983 for their deliberately indifferent policies, practices, habits, customs, procedures, training and supervision of staff with respect to the provision of medical care and treatment for inmates. Upon entering into contracts or subcontracts to provide medical and/or other services to Smith County inmates, Turn Key assumed public functions, acted under color of state law,

and is legally responsible to comply with all requirements of the United States Constitution.

26.     Defendant Maria Dimaculanga ("Dimaculanga"), was a citizen of the United States and a resident of Texas.  Dimaculanga is being sued in her individual capacity and as a member of TURN KEY. At all times relevant hereto, Defendant Dimaculanga was an agent, employee, and/or subcontractor of the Turn Key Defendants, and was responsible for providing medical care to Torry Lamont Newman during his detention. At all material times, this Defendant was acting under color of state law. Defendant Dimaculanga may be served with process wherever they may be found.

27.     Defendant Kelly Nichole Ellis ("Ellis"), was a citizen of the United States and a resident of Texas.  Ellis is being sued in her individual capacity and as a member of TURN KEY.   At all times relevant hereto, Defendant Ellis was an agent, employee, and/or subcontractor of Turn Key Defendants, and was responsible for providing medical care to Torry Lamont Newman during his detention. At all material times, this Defendant was acting under color of state law. Defendant Ellis may be served with process wherever they may be found.

28.     **Defendants JOHN DOE SMITH COUNTY JAILERS 1 - 20** are Smith County employees working at the Smith County Jail (whom Plaintiff understands to be sheriff's deputies or detention services officers) in the Smith County Sheriff's Office.  Each Defendant's acts or omissions complained of herein arises from his/her conduct while acting under color of law, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Texas and/or Smith County.  **Defendants John Doe Smith County Jailers 1 - 20** were legally responsible to follow and implement the policies of the Dallas County Sheriff's Office and the United States Constitution with respect to all matters

concerning the care and custody of inmates in the Smith County Jail.  **Defendants John Doe Smith County Jailers 1 - 20** were responsible for ensuring that the custody, safekeeping, medical needs, housing, and discharge of all inmates, including Torry Lamont Newman, were in compliance with federal and state law, department and agency policies, and rules, regulations and related standards of care, including the implementation of the policies, procedures, practices, and customs and the acts and omissions challenged by this suit. **Defendants John Doe Smith County Jailers 1 - 20** are sued in their individual capacities. At this time, the identities of these Defendants are known only to their employer, Defendant Smith County.

29.     **Defendants JOHN DOE MEDICAL PROVIDERS 1 - 5** are employees for Turn Key Health Clinics and/or Turn Key Health Clinicians working at the Smith County Jail. Each Defendant's acts or omissions complained of herein arises from his/her conduct, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Texas and/or Smith County.  **Defendants John Doe Medical Providers 1 - 5** were legally responsible to follow and implement the policies of the Dallas County Sheriff's Office and the United States Constitution with respect to all matters concerning the medical care and treatment of inmates in the Smith County Jail, including Torry Lamont Newman.  **Defendants John Doe Medical Providers 1 - 5** are sued in their individual capacities.  At this time, the identities of these Defendants are known only to their employer, Turn Key Health Clinics and/or Turn Key Health Clinicians.

**Non-Parties**

30.     Ken Warren ("Warren") was an inmate at the Smith County Jail being held in a detox cell within view of Mr. Newman on the date of Mr. Newman's death.

31.    Joshua Jenkins ("Jenkins") is a Texas Ranger who conducted an official investigation into the death of Mr. Newman.

### III. SUMMARY OF THE CASE

32.    On January 28, 2022, Torry Lamont Newman entered a guilty plea for his third DWI, agreeing to a ten (10) year sentence to take accountability for his actions. Following the sentencing, Mr. Newman was immediately booked into the Smith County Jail and placed under the care and custody of the Smith County Sheriff's Office until his death at the Smith County Jail on February 18, 2022.

33.    At the time of his incarceration, Torry Lamont Newman had been dealing with long-term asthma since childhood and hypertension for the past ten years. As Mr. Newman entered adulthood, his asthma worsened. At the time Mr. Newman entered the Smith County Jail, both of these chronic medical conditions were well-managed with prescription medications. Mr. Newman's current medical regimen when he entered the Smith County Jail, as recommended by his physician to manage his hypertension, involved taking Prednisone 10 mg tablets every day for 10 days, Metoprolol Tartrate 25 mg tablets once daily, and Amlodipine Besylate 10 mg once daily. For his long-term asthma, Mr. Newman had been instructed to take Montelukast SOD 10 mg tablets once every night and use his Albuterol Sulfate 90 mcg and Budesonide and Formoterol Fumarate Dihydrate inhalers once or twice every 4 to 6 hours to manage his chronic asthma.

34.    After Torry Lamont Newman was booked into the jail, he was taken to see the jail nurse to be assessed and to fill out a medical questionnaire. At the time Mr. Newman was in the care and custody of the Smith County Sheriff's Office, Defendants were aware of his chronic medical conditions.

35.     Shortly after Mr. Newman was booked into the Smith County Jail, Defendants placed him in a separation/isolation cell from approximately on January 28, 2022, where he remained until his passing on February 18, 2022. Throughout this timeframe, Defendants neglected in furnishing Mr. Newman with the requisite medical care essential for addressing his documented chronic medical issues. Instead, Defendants ignored Mr. Newman's pleas for help. When Defendants finally checked on him, it was too late; Mr. Newman had died. An autopsy report from Southwestern Institute of Forensic Sciences at Dallas and a toxicology report from NMS Labs revealed that Mr. Newman was not receiving his prescription medication.

36.     Mr. Newman's death was a direct result of the failure and refusal of Defendants Smith County, the Smith County Sheriff, jailers Shoemaker, Vallejo-Robles, Vega, Velaquez, and Washington, John Doe Smith County Jailers 1-20, nurses Dimaculanga and Ellis, Turn Key Health Clinicians, PLLC, Turn Key Health Clinics, LLC and John Doe Medical Providers 1-5, to give Mr. Newman adequate medical care and failure to administer to Mr. Newman his physician-prescribed medications for his known chronic asthma and hypertension conditions. Torry Lamont Newman's need for the prescribed long-term maintenance treatment for his chronic medical conditions was apparent in the severe symptoms he experienced when that treatment was withheld while he pleaded for help in his separation cell.



37.     Along with the Defendants' failure and refusal to provide Torry Lamont Newman with adequate medical care for his severe asthma, by administering his prescribed Albuterol Sulfate and Budesonide and Formoterol Fumarate Dihydrate medications, which were necessary for Mr. Newman's long-term maintenance treatment of his known chronic medical conditions, the Defendants failed to prevent, or reduce the severe symptoms caused by their withdrawal of that treatment, including: heavy sweating, disorientation, shortness of breath, chest pain, nausea, panic, anxiety, and elevated stroke level blood pressure. Torry Lamont Newman suffered substantial harm from Defendants' failure and refusal to give him adequate medical care that led to his death.

38.     After the severe symptoms began to heavily manifest, the Defendants failed and refused to seek emergency medical services for Torry Lamont Newman, or reassign his housing to the medical unit of the Smith County Jail, but rather held Torry Lamont Newman in a separation cell, where twenty-one days later Torry Lamont Newman was found, cold on the floor, bruised, unresponsive and without a pulse.



#### IV. <u>NATURE OF THE CASE</u>

39.     This is an action for Constitutional violations and state law personal injuries suffered by Decedent, Torry Lamont Newman, as a result of the unreasonable treatment, conditions, care, and isolation while incarcerated at the Smith County Jail. Plaintiffs bring this action for compensatory damages under 42 U.S.C. § 1983 because Defendants deprived decedent of his federally-protected right to be free from unlawful seizure, cruel and unusual punishment, and because they denied him due process of law. U.S. CONST. amends. IV, VIII and XIV. Pursuant to 42 U.S. C. §1983 and §1985, they are seeking recovery and redress for violations of the constitutionally-protected civil rights of Torry Lamont Newman, decedent.

40.     Torry Lamont Newman was convicted and awaiting transfer from the Smith County Jail to prison. Therefore, the standard for liability is found under the Eighth Amendment, which prohibits cruel and unusual punishment.[2] Government officials performing discretionary functions generally are shielded from liability for civil damages

---

[2] The Eighth Amendment prohibition against cruel and unusual punishment pertains to punishment after being convicted of a crime. U.S. Const. amend. VIII.

insofar as their conduct does not violate <u>clearly established</u> statutory or <u>constitutional rights</u> of which a reasonable person would have known.[3] The administration of medical care to an inmate is a discretionary function.[4] Therefore, jail officials are not shielded from liability if they failed to administer Torry Lamont Newman's medication for his known chronic medical conditions. Mr. Newman had a clearly established constitutional right against cruel and unusual punishment.[5] Deliberate indifference to an inmate's serious illness or injury constitutes cruel and unusual punishment in violation of the Eighth Amendment.[6]

41.     The United States Supreme Court has held that a county jail has a non-delegable duty to provide reasonable and necessary medical services that meet the requirements of the Constitution and interpretive case law.[7] The Supreme Court has further held that deliberate indifference to a prisoner's serious illness or injury constitutes cruel and unusual punishment in violation of the Eighth Amendment.[8]

42.     Jail officials violate the Eighth Amendment prohibition against cruel and unusual punishment when their conduct demonstrates deliberate indifference to an inmate's serious medical needs, constituting an "unnecessary and wanton infliction of pain."[9] To be tantamount to the infliction of cruel and unusual punishment, prison officials must have acted with deliberate indifference to the risk posed.[10] The "deliberate indifference" standard requires "a showing that the official was subjectively aware of the risk of serious harm to the

---

[3] *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).
[4] *Id.*
[5] U.S. Const. amend. VIII.

[6] *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006).
[7] *See West v. Atkins*, 487 U.S. 42, 54-57 (1988)
[8] *See Estelle v. Gamble*, 429 U.S. 1066 (1977).
[9] *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).
[10] *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015).

inmate."[11] A prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. [12] Depriving an inmate of medication is deliberate indifference.[13]

43.     In addition to the claims against jail officers and officials, Plaintiffs plead that the general conditions, practices, rules, restrictions, and policies at the Smith County Jail were a cause of Plaintiffs' damages. Plaintiff further pleads that the facts as stated above raise a "conditions-of-confinement" theory of liability under § 1983 and the Due Process Clause.[14]

44.     To establish municipal liability under 42 U.S.C. § 1983, the Plaintiffs must show by the preponderance of the evidence that: (1) an official policy or custom, of which (2) a policy maker can be charged with actual or constructive knowledge, (3) the policy maker was deliberately indifferent; and (4) a constitutional violation whose "moving force" is that policy or custom.[15] A "policy" can be a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the county's officers. A "custom" is a persistent, widespread practice of county's officials or employees that, although not formally adopted, is so common and well-settled that it fairly represents the county's policy. But to show a custom, Plaintiffs must prove that either the county's governing body or some official with policymaking authority knew or should have known about the custom. For example, the policy or custom of: refraining from calling EMS, isolating and not medicating chronically ill

---

[11] *Farmer,* 511 U.S. at 829, 114 S.Ct. 1970.

[12] *Easter* at 463 (5th Cir. 2006).

[13] *See Farmer,* 511 U.S. at 829, 114 S.Ct. 1970. (Although the Eighth Amendment does not mandate a certain level of medical care for prisoners, the Supreme Court has interpreted it as imposing a duty on prison officials to "ensure that inmates receive adequate ... medical care.").

[14] *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996)).

[15] *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

inmates, denying medical treatment to inmates, and neglecting to provide emergency care.

45.     On January 28, 2022, Torry Lamont Newman entered a plea of guilty for his third DWI, and agreed to serve a ten (10) year sentence. At the time of his sentencing hearing, Mr. Newman, a long-term asthmatic, needed additional medical treatment, as advised by his doctor, due to his recent experience of contracting COVID-19 twice. Despite informing the Court of doctor's letters cautioning against court attendance and incarceration due to surgery-related health concerns, the Court denied Mr. Newman's and his attorney's request for a two-week delay and reassured him that his chronic medical needs and health concerns would be made known to the jail, as that was standard protocol to inform the jailers of any medical concerns, upon entering the Smith County Jail.

46.     There is no dispute that Defendants were aware of Mr. Newman's medical needs. Defendant Smith announced in a media interview that the Sheriff's Office recently signed a new inmate health contract with Defendant Turn Key Health Clinics[16] and stated, "We have a full-time intake nurse, where the inmate comes in by law enforcement, into the jail, is booked in, they see the nurse right then, and they do their full medical questionnaire that they fill out and assess them at that time". [17]

> "We have more coverage. We have a full-time intake nurse, where the inmate comes in by law enforcement, into the jail, is booked in, they see the nurse right then, and they do their full medical questionnaire that they fill out and assess them at that time," Smith said.

*KLTV 7 Article: "Smith County Jail signs new contract for inmate medical services"*

47.     Furthermore, Defendant Vallejo-Robles admitted during her interview with

---

[16] Under *Sanchez v. Oliver*, Defendants Turn Key are "systematically organized to perform the major administrative task of providing [medical] care at state facilities" and are not entitled to assert qualified immunity. 995 F.3d 461, 467 (5th Cir. 2021).
[17] https://www.kltv.com/2021/01/25/smith-county-jail-signs-new-contract-inmate-medical-services/

Texas Ranger Jenkins that Mr. Newman only spoke to the staff when it was time for him to take his medication or to eat. *See* Ex. A: Page 12: February 18, 2022 Texas DPS Ranger Investigation Report. Plaintiffs have requested Mr. Newman's medical records but they have not been produced.

> S4.22    She described Newman's routine behavior as sleeping all the time. She said Newman would not talk or ask for stuff. She told me he would only talk to you when it was time for medication or to eat.

**February 18, 2022 Texas Ranger Report, pg. 12.**

48.    From approximately January 28, 2022 until February 18, 2022, Defendants, persons at the Smith County Jail in charge of providing medical care to Torry Lamont Newman, both knew of and disregarded an excessive risk of severe injury or death to Mr. Newman, by ignoring his complaints, ignoring his doctor's written directives, refusing to treat him, and intentionally failing to follow the recommended and prescribed treatment for Mr. Newman's serious asthma and cardiovascular disorder, known chronic medical conditions. Such conduct violated well-established federal law of which a reasonable person in Defendants' position would have known.[18]

49.    Defendants demonstrated deliberate or callous indifference to Mr. Newman's serious medical needs, constituting an unnecessary and wanton infliction of pain and injury, in violation of the Eighth Amendment to the United States Constitution. All Defendants acted under color of state law.

50.    From the judge to the bailiff, to the medical personnel, and to the jailers, Defendants failed to implement the policies, procedures, and practices necessary to provide

---

[18] *See, e.g., Fielder v. Bosshard,* 590 F.2d 105, 107 (5th Cir. 1979).

constitutionally adequate mental health treatment and medical services to Torry Lamont Newman during his incarceration in the Smith County Jail. Furthermore, Defendants implemented policies, procedures, and practices that interfered with or prevented Torry Lamont Newman from receiving the necessary mental health treatment and medical services. Despite being aware of Mr. Newman's requirement for his prescription medications to manage his chronic medical conditions, Defendants deliberately withheld them.

51.     The jail staff unmistakably heard his pleas for medication and discomfort during the last few hours of his life as he struggled with asthma. Shockingly, they allowed him to suffocate a mere 10 feet from a fully staffed booking desk and within a high-traffic area. Defendants failed to medically monitor Mr. Newman in accordance with Texas Jail Standards and intentionally failed or refused to provide adequate medical treatment that was necessary for his known chronic medical conditions.

52.     As a direct result of the policies, practices, customs and procedures at the Smith County Jail, decedent was deprived of his constitutional rights as guaranteed to him by the United States Constitution. Specifically, Plaintiffs allege that Smith County and Smith County Sheriff Smith violated Torry Lamont Newman's civil rights pursuant to the Eighth Amendment and Fourteenth Amendment of the United States Constitution to be free from cruel and unusual punishment, to receive proper medical care, and to receive adequate medical care, while incarcerated and under the custody and control of Smith County, at the Smith County Jail under the supervision and control of the Smith County Sheriff, Smith County jailers Shoemaker, Vallejo-Robles, Vega, Velaquez, and Washington, John Doe Smith County Jailers 1-20 and Smith County Jail's Contracted Medical Providers, Turn Key Health Clinicians, PLLC and/or Turn Key Health Clinics, PLLC, Defendants Dimaculanga and Ellis,

and/or John Doe Medical Providers 1-5.

53.     Defendant jailers acting in the course and scope of their employment with the County, and nurses and medical providers acting in the course and scope of their employment with the County and/or Turn Key, acting under color of state law, unjustifiably isolated and failed to medically treat the decedent until he died. Said actions were taken under circumstances where no reasonable nurse, medical provider or jailer would have done so. Under long established law on unlawful seizure, cruel and unusual punishment and due process, the individual Defendants are not entitled to qualified or other immunity for these actions. The unconstitutional and tortious acts of the individual defendants were not isolated incidents. Rather these acts were consistent with a custom, pattern and practice at the Smith County Jail of failing to properly train and supervise its nurses and jailers in these critical care taking responsibilities and failing to respond to the decedent's screams for help.

54.     Thus, beyond compensating Plaintiffs for their continuing injuries, this action seeks to redress the unlawful municipal customs, policies, patterns and practices pursuant to which defendants, acting under color of law both independently and in concert, violated the decedent's clearly established rights as guaranteed by the Eighth and Fourteenth Amendment to the United States Constitution.

55.     As a result of Defendants' tortious and unconstitutional conduct, Plaintiffs seek relief for the defendants' violation of decedent's rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, and of the rights secured under the laws of the State of Texas. Plaintiffs seek damages, compensatory and punitive, affirmative and equitable relief, an award of costs and attorney's fees, and for such other and further relief as this court deems equitable and just.

# V. <u>FACTUAL BACKGROUND</u>

## A.  Factual Allegations

56.     Plaintiffs provide in the factual allegations sections below the general substance of certain factual allegations. Plaintiffs do not intend that those sections provide in detail, or necessarily in chronological order, any or all allegations. Rather, Plaintiffs intend that those sections provide Defendants sufficient fair notice of the general nature and substance of Plaintiffs' allegations, and further demonstrate that Plaintiffs' claim(s) have facial plausibility. Whenever Plaintiffs plead factual allegations "upon information and belief," Plaintiffs are pleading that the specified factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.  Plaintiffs also plead factual allegations discovered during discovery limited to the qualified immunity of Defendants.

57.    This case arises from the deliberate indifference and denial of medical and mental health care needed by Torry Lamont Newman while detained in the Smith County Jail. Torry Lamont Newman had known chronic medical conditions which required prescription medication, medical care, supervision, and monitoring.  These conditions were known to the County, Sheriff, jailers, jail staff, Turn Key, and medical staff.

## B.  General Factual Allegations

58.    This is a case of a tragic denial of medical care desperately needed by Torry Lamont Newman, a Smith County inmate.  Jailers and medical staff ignored Mr. Newman's pleas for help. Torry Lamont Newman sat in a jail cell suffering from a life-threatening critical condition that was known to jailers, supervisors and jail medical staff.

59.    Torry Lamont Newman was born in Texas and was the child of Joyce Newman.

He is survived by his wife, mother, and each and every one of his children.

60.     On January 28, 2022, Torry Lamont Newman pled guilty to his third DWI, and agreed to serve a ten (10) year sentence, in an effort to take personal responsibility for his actions. *See* Ex. B: 2022-01-27 Plea and Sentencing Hearing - Torry Newman Volume 2.

61.     At the time of his incarceration, Torry Lamont Newman was 46 years old.  He was 5'7" tall and weighed approximately 160 pounds. *See* Ex. C: Autopsy of Torry Newman. He loved his wife, mother, children, extended family, and friends; he had every intention of securing release from jail and resuming his family life and embarking on a new chapter awaiting him upon his release.

62.     During the sentencing hearing, Mr. Newman informed the Court that he had recently recovered from COVID-19 and about his ongoing asthma concerns. He requested a one-week delay before surrendering and explained his need for further medical examination as recommended by his doctor, and mentioned having contracted COVID-19 twice. *See* Ex. D: Page 1, UT Health East Texas Physicians Medical Record – January 12, 2022. Although Mr. Newman had recently recovered from COVID-19 and been cleared from isolation, Dr. Hardy, Mr. Newman's treating physician, recommended that he receive a vaccination one month after recovering and a second vaccination three weeks later. *See* Ex. E: UT Health East Texas, Physician's Note – January 12, 2022. Mr. Newman received his first vaccination on January 27, 2022. However, he was unable to receive his second vaccination on February 17, 2022, the recommended date for his second vaccination, because he was incarcerated at that time. *See* Ex. F: Torry Newman Covid-19 Vaccination Record Card.



**Author:** David Hardy, FNP **Service:** — **Author Type:** Nurse Practitioner
**Filed:** 1/12/2022  4:13 PM **Encounter Date:** 1/12/2022 **Status:** Signed
**Editor:** David Hardy, FNP (Nurse Practitioner)

**Subjective**

**Patient ID:** Torry Lamont Newman is a 46 y.o. male.

Presents to f/u after having COVID-19 for the second time in the last  3-4 months. He was discharged this time from the hospital after 3 days. He was discharged 15 days ago. He states that this episode was not nearly as bad as the first time he had it.

The following have been reviewed and updated as appropriate in this visit:
Tobacco | Allergies | Meds | Problems | Med Hx | Surg Hx | Fam Hx |

Review of Systems
Constitutional: Positive for fatigue. Negative for chills, diaphoresis and fever.
HENT: Negative.
Eyes: Negative.
Respiratory: Positive for cough, shortness of breath and wheezing. Negative for chest tightness.

*UT Health East Texas Physicians – January 12, 2022*



**Patient:**    **Torry Lamont Newman**
**Date of Birth:** 9/14/1975
**Date of Visit:** 1/12/2022

To Whom it May Concern:

Torry Newman was seen in my clinic on 1/12/2022 at 2:15 pm. He is cleared to be off any isolation from his recent COVID-19 illness. However, I would recommend that he get vaccinated for COVID 1 month from his last episode of COVID and then take the 2nd vaccine 3 weeks after that.

If you have any questions or concerns, please don't hesitate to call.

*UT Health East Texas, Physician's Note – January 12, 2022*

*Torry Newman COVID-19 Vaccination Record Card*

63.    Mr. Ellis, Mr. Newman's attorney, emphasized the severity of Newman's asthma

and explained that nasal surgery six months ago had led to multiple hearing postponements.

Despite providing doctor's letters advising against attending court and going to jail due to

health concerns related to the surgery, the Court denied Newman's request for any type of delay, stating that the Court had formally assessed his sentence. The Court explained that once a defendant with a medical condition is sentenced and remanded into custody, the responsibility lies with the medical professionals at the jail. The bailiff interjected, assuring Newman that upon his arrival at the jail, he could consult with medical staff, and the Court instructed the bailiff to ensure that the medical staff was informed. The Court concluded by stating that the jail personnel would take care of Mr. Newman.

64.    At the time of Mr. Newman's doctor's visit, his asthma and hypertension were stable, and his doctor advised him to continue with his current medication regimen as part of his ongoing treatment plan. *See* Ex. D: Page 2-3, UT Health East Texas Physicians Medical Record – January 12, 2022.



*Page 2-3, UT Health East Texas Physicians Medical Records – January 12, 2022.*

65.    Once a detainee, like Mr. Newman, who had a known, serious medical condition, had been formally sentenced and remanded to the custody of the Jail, it was the Jail's and medical staff's responsibility to ensure that Mr. Newman was evaluated for any medical conditions and received proper medical care. The Jail and medical staff had the responsibility to ensure that Mr. Newman received proper medical care by immediately completing a medical screening form and maintaining an accurate medical record with a timeline of medical

services, nursing notes, physician orders, and records of medication administrations.[19]



*Smith County Jail Inspection Report*

66.    From day one the health care workers in the jail understood that Mr. Newman

had a history of asthma and relied on prescribed medications like Albuterol Sulfate, and

Budesonide and Formoterol Fumarate Dihydrate.

| 10 | THE DEFENDANT:  Judge, I just got off |
|----|---------------------------------------|
| 11 | of -- just got out of COVID, and I've got asthma, and |
| 12 | my doctor is still wanting to check me.  I was just |

*Transcript of Newman Plea and Sentencing Hearing: Page 20: 10-12.*

| 25 | MR. ELLIS:  He has asthma real bad. |
|----|-------------------------------------|

*Transcript of Newman Plea and Sentencing Hearing: Page 20: 25.*

```
15              THE BAILIFF:  And at the jail he will see
16   the medical staff when he first goes in.  If he has
17   appointments that are coming up, he can make them aware
18   of that.  If they can set it up for those appointments,
19   that would be something they could do.  But that would
20   be up to the medical staff there at jail.
21              THE COURT:  Would you be sure and let the
22   medical staff know?
23              THE BAILIFF:  Yes, sir.
24              THE COURT:  Okay.  So my bailiff is going
25   to be sure the medical staff know you're coming in, and
1    they'll take care of --
```

*Transcript of Newman Plea and Sentencing Hearing: Pages 22:15-23:1.*

```
4               THE COURT:  Well, all I can say about
5    that is, I mean, occasionally there's a defendant got
6    some medical condition, they're sentenced to TDC,
7    they're remanded into custody, and then I just have to
8    rely on the medical professionals at the jail or at
9    TDC.  That's all I can do.  Once I -- once I formally
```

*Transcript of Newman Plea and Sentencing Hearing: Page 22: 4-9.*

```
9               THE COURT:  Well, just tell the jail
10   personnel and they'll take care of you.
```

*Transcript of Newman Plea and Sentencing Hearing: Pages 23:9-10.*

67.    During the time that Torry Lamont Newman was in Smith County Jail, the Jail was inadequately staffed with jailers that had not received the required training to heed to calls for a doctor or a life-threatening critical illness.

68.    It is clear that only after Torry Lamont Newman suffered for hours and died lying naked on the floor in a separation cell, that a jailer checked on him, but it was too late. Defendants' deliberate indifference and objective unreasonableness caused Torry Lamont Newman's unnecessary death. Mr. Newman was essentially tortured by Defendants' failure and refusal to provide him with his prescribed medications.

69.    Defendant Vega stated that Mr. Newman's body was cold to the touch when he discovered his body.

S5.9    Vega stated he walked over to Newman and thought at first, he was just sleeping. When he got closer, he saw Newman had one eye opened and it shocked him. Vega said he touched Newman on his arm, and he felt cold to the touch.

*Texas DPS Ranger Investigation Report*

70.    Texas law requires that the County have Torry Lamont Newman's death investigated by an outside agency. Texas Rangers[20] conducted an investigation into the death of Mr. Newman. According to the *Custodial Death Report*, Torry Lamont Newman was "discovered by jail staff in his separation cell unresponsive" around 5:10 A.M on February 18, 2022. *See* Ex. A: Page 3: February 18, 2022 Texas DPS Ranger Investigation Report.

S2.3    Shoemaker told me Newman was inside of a separation cell and was being housed by himself. Newman's cell has a motion sensor activated camera. Shoemaker stated they were working to provide me with a copy of the cell footage.

**February 18, 2022 Texas Ranger Report, pg. 3.**

---

[20] The purpose of a Texas Rangers investigation regarding a custodial death, such as the decedent's, is to determine whether there was any criminal responsibility for what occurred.  Texas Rangers do not determine whether there is civil liability for violation of a person's constitutional rights, such as that alleged in this case.  Therefore, the Texas Rangers' determination as to whether to turn the case over to a grand jury and recommend prosecution does not determine whether Defendants are liable under 42 U.S.C. § 1983 for the decedent's death.

71.     After Mr. Newman's death, a toxicology report revealed that Mr. Newman had not been receiving his asthma medications. While Amlodipine and Metoprolol were detected, the test did not yield any positive findings of Metoprolol nor Budesonide. *See* Ex. G: NMS Labs Toxicology Report.

**Positive Findings:**

| Analyte | Result | Units | Matrix Source |
|---|---|---|---|
| Amlodipine | 31 | ng/mL | 001 - Femoral Blood |
| Metoprolol | 29 | ng/mL | 003 - Vitreous Fluid |
| Metoprolol | >500 | ng/mL | 004 - Urine |

See Detailed Findings section for additional information

**Testing Requested:**

| Test | Test Name |
|---|---|
| 0165B | Albuterol, Blood |
| 0165FL | Albuterol, Fluid |
| 0315B | Amlodipine, Blood |
| 3043B | Metoprolol, Blood |
| 3043FL | Metoprolol, Fluid |
| 3043U | Metoprolol, Urine |
| 7734SA | Special Request (ES1): Budesonide |

72.     It was known from the inception of Mr. Newman's incarceration that he suffered from asthma and cardiovascular disease. Ultimately, the pathologist determined that the primary cause of his death was from complications associated with asthma. *See* Ex. C: Autopsy of Torry Newman.

**CONCLUSIONS:**

Based on the case history and autopsy findings, it is my opinion that Torry Lamont Newman, a 46-year-old black male, died as the result of asthma in conjunction with hypertensive and atherosclerotic cardiovascular disease.

73.     Torry Lamont Newman died because: (1)  the Defendants failed and refused to administer his prescribed medications, (2) Defendants failed and refused to treat him for his asthma disease, (3) Defendants jail staff and medical providers ignored his medical complaints,  (4) Defendants failed and refused to medically monitor him in accordance with

Texas Jail Standards, (5) Defendants intentionally failed and refused to provide adequate medical treatment that was necessary for his known chronic medical conditions, and (6) Defendants had wanton disregard and deliberate indifference for Torry Lamont Newman's serious medical needs, by delaying medically necessary emergency medical treatment after Mr. Newman's continual pleas for help, resulting in Torry Lamont Newman's death.

74.    His surviving mother and heirs, LaTosha Newman, Joyce Newman, NaTori Newman, Tevin Newman, ShaTorry Newman, and Brian Newman, as Independent Administrator the Estate of Torry Lamont Newman bring this action seeking fair compensation, appropriate training with the hope that they can prevent other inmates and prisoners at the Smith County Jail from suffering similar excruciating injuries and/or death, and acknowledgment from the Sheriff that their son died as a result of Smith County and the Smith County Sheriff's decision making, and policies.

### C.  Torry Lamont Newman's Incarceration and Death in the Smith County Jail

75.    Torry Lamont Newman was booked into the Smith County Jail on January 28, 2022 and began his sentence.

76.    Prior to being booked into the Smith County Jail, Mr. Newman was treated by his physician for his asthma and high blood pressure.  His asthma and cardiovascular diseases were under control at this time.

77.    For some unknown reason, Torry Lamont Newman's clothes were taken from him and he was moved to a single person separation cell and was being housed by himself, also known as "Detox 2", which is located on the first floor, in the jail's booking area. *See* Ex. A: Page 3: February 18, 2022 Texas DPS Ranger Investigation Report.

> S2.4      Newman was being housed in a single person cell labeled "Detox 2." Detox 2 is located on the first floor of the Smith County Jail within proximity of the jail's booking area. There is a window on the cell's door and two windows located to the right of the door. There was a tray of food outside Newman's cell near the door, which Shoemaker told me belonged to Newman.

**February 18, 2022 Texas Ranger Report, pg. 3.**

78.     Torry Lamont Newman, which on information and belief, was moved to Detox 2 around January 28, 2022 and kept there until his death on February 18, 2022.  During this period, Mr. Newman experienced severe symptoms related to Defendants' failure and refusal to provide him with adequate medical treatment that was necessary for his known chronic medical conditions, including shortness of breath, heavy chest pain, and disorientation.

79.     Inmate Warren was in a holding cell next to Mr. Newman on February 18, 2022. During this time, he heard cries and screams coming from Mr. Newman's cell that kept him from being able to sleep. For hours, Mr. Newman continuously beat on the glass window stating he needed water. Warren stated Mr. Newman beat on the window and begged for water for at least one hour and became silent. Two hours passed and a jailer stated they needed to check on Mr. Newman because his cell was quiet.

80.     Torry Lamont Newman did not receive constitutionally required emergency medical services, care, or treatment from Smith County, the Sheriff,  jailers Shoemaker, Vallejo-Robles, Vega, Velaquez, and Washington, John Doe Smith County Jailers 1-20, Turn Key, Defendants Dimaculanga and Ellis, and John Does Medical Providers 1-5 from January 28, 2022 until he was found unresponsive without a pulse. On February 18, 2022, Torry Lamont Newman was found nude and unresponsive in his jail cell.

81.     Texas Administrative Code Rule §275.1 requires Regular Observation be

---

performed at least every 30 minutes in areas where inmates are known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior while confined. There shall be a two-way voice communication capability between inmates and jailers, licensed peace officers, bailiffs, and designated staff at all times, and closed-circuit television may not be used in lieu of the required personal observation.

82.    Torry Lamont Newman was not, but should have been supervised face to face every thirty minutes by the jailers, licensed peace officers, bailiffs, or designated staff, as a result of his known and documented mental health status, and at least once an hour by jail medical personnel due to his asthma and medical conditions; however, Mr. Newman was left unsupervised for hours at times. *See* Ex. A: Page 10, February 18, 2022 Texas DPS Ranger Investigation Report

> S4.6    Sgt Vallejo-Robles stated Torry Lamont Newman, (B/M, DOB: ____ ) was in a cell by himself due to his mental state. She said he wasn't aggressive but couldn't be with other inmates because he couldn't take care of himself. She did not recall any significant information concerning Newman during her briefing with jail staff from 1st shift.

**February 18, 2022 Texas Ranger Report, pg. 10.**

### D.  Torry Lamont Newman's Prescription Medication

83.    Torry Lamont Newman, as mentioned above, had been prescribed 25 milligrams of Metoprolol Tartrate to be taken once daily, 10 milligrams of Prednisone to be taken once daily, 10 milligrams of Montelukast to be taken once every night, 10 milligrams of Amlodipine Besylate to be taken once daily, and two Albuterol Sulfate, and Budesonide and Formoterol Fumarate Dihydrate inhalers. This medication had been prescribed by his physician to treat his severe asthma and cardiovascular disorder for over a decade.





**E.  Torry Lamont Newman's Experience at the Smith County Jail**

84.    Despite suffering from severe symptoms, not a single medical staff member or Smith County personnel appropriately addressed Torry Lamont Newman's medication-related challenges during his time in Detox 2. This was evident as they failed to conduct regular mental status exams while Mr. Newman was in a separation cell.

85.    Smith County and Smith County jail medical staff members failed to adequately interview, access, or review Mr. Newman's medical records. The Jail medical staff members failed to administer proper mental health or physical evaluations. The Jail medical staff members failed to supervise and regularly check Mr. Newman's vital signs when he was under

a mental health status watch in Detox 2. The Jail medical staff members failed to adequately review Mr. Newman's chart or medical history, despite their awareness of Mr. Newman's mental status while he was in Detox 2, suffering from asthma attacks.

86.     The Jail medical staff members also failed to properly monitor Torry Lamont Newman.   Despite Mr. Newman's distress, not one of the Jail medical staff members consulted any of Mr. Newman's primary treating physicians or sought his medical history and never conducted a mental health status exam, or sent Mr. Newman to the Hospital.

87.     While in a solitary confinement cell, Torry Lamont Newman was locked in his single cell and was away from the other inmates and unable to make phone calls or use the showers without a jailer's consent.

88.     Once housed in the solitary confinement cell, Torry Lamont Newman continued to suffer from severe, obvious, and terrifying symptoms from not receiving his long-term maintenance treatment for his chronic medical conditions, until his death. Jail medical staff members withheld the Metoprolol Tartrate, Prednisone, Montelukast, Amlodipine Besylate, Albuterol Sulfate, and Budesonide and Formoterol Fumarate Dihydrate medications from Mr. Newman and failed to timely contact Mr. Newman's primary physicians, before commencing the cessation of the lawfully prescribed Metoprolol Tartrate, Prednisone, Montelukast, Amlodipine Besylate, Albuterol Sulfate, and Budesonide and Formoterol Fumarate Dihydrate.

**F.  <u>Failure to Train or Inadequate Training</u>**

89.     Ultimately the training of all jail staff is the responsibility of Sheriff Smith. The training provided by Smith County is so inadequate as to constitute a failure to train. Members of the jail staff are not instructed on differentiating between a mental health condition, asthma

conditions, cardiovascular conditions, and side effects and/or symptoms of an inmate not receiving their necessary medications. Moreover, the treatment offered by staff is the same for any inmate that is mentally incoherent regardless of the cause of their incoherency. While jail staff will undoubtedly acknowledge that they are not equipped to deal with an inmate having worsening chronic medical conditions as a result of the abrupt disruption of the medications that his body relied upon to treat his asthma, they are also not trained to assess such symptoms and seek medical treatment. Mr. Newman should have been transported to a hospital, where physicians and mental health providers could have treated him. Instead, he was observed until death in a separation cell. This improper or inadequate training is deliberately indifferent to the medical needs of inmates such as Torry Lamont Newman and was a direct cause of his death.

## G.  Policies, Practices and Culpable Conduct

90.    Sheriff Larry R. Smith, Smith County, Texas, and any John Doe policy makers were deliberately indifferent to the serious medical needs of Torry Lamont Newman by failing to train staff and implement jail policies, practices, customs and usages that adequately addressed the obvious and known health and safety risks to inmates with serious chronic medical conditions entering the Jail while taking prescribed medications.  This includes the likelihood that a person with such conditions would experience severe symptoms, substantial harm, and death when his prescribed medications were withheld, without proper medical treatment being available.

91.    Sheriff Larry R. Smith, Smith County, and any John Doe policymakers acted recklessly, wantonly, willfully, knowingly, intentionally and with deliberate indifference to the serious medical needs of Torry Lamont Newman, when Mr. Newman began

demonstrating severe symptoms upon the abrupt cessation of the long term Metoprolol Tartrate, Prednisone, Montelukast, Amlodipine Besylate, Albuterol Sulfate, and Budesonide and Formoterol Fumarate Dihydrate which Mr. Newman needed for his severe asthma and cardiovascular disorder.

92.     As a direct and proximate result of the Defendants' actions, before his death Torry Lamont Newman suffered severe emotional distress, pain, suffering, and extreme and horrifying mental distress.

93.     As a further direct and proximate result of Torry Lamont Newman's wrongful death, Latosha Newman, Joyce Newman, his survivors and/or heirs have suffered permanent damages, including but not limited to, the loss of his support, services, and society, including loss of companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, as well as the loss of prospective inheritance.

94.     As a further direct and proximate result of Torry Lamont Newman's wrongful death, Torry Lamont Newman's survivors, next of kin and/or heirs have suffered permanent damages, including, but not limited to, grief, depression, and severe emotional distress. The Estate of Torry Lamont Newman has incurred funeral bills.

95.     Defendants' violations of Torry Lamont Newman's constitutional rights resulted from a policy, pattern, custom and/or practice of deliberate indifference to the serious medical needs of inmates at the direction and encouragement of the policymakers.

96.     Plaintiffs assert that the death of Torry Lamont Newman was the result of the actions or failures to act of Defendants Sheriff Larry R. Smith, Smith County, Texas, and any John Doe Policymakers. The death and harm suffered was the result of Defendants' conduct motivated by evil intent, or done recklessly or with deliberate and callous indifference to the

federally protected rights of Torry Lamont Newman.

## VI. CAUSE OF ACTION

### H.  Smith County's *Monell* and Sheriff Smith's Supervisory Liability

97.    All preceding paragraphs are incorporated here by reference.

98.    Plaintiffs set forth in this section of the pleading additional facts and allegations supporting liability claims against Smith County pursuant to *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978). All facts asserted in this pleading relating to policies, practices, customs, and/or culpable conduct of the County support such *Monell* liability claims. Such liability arises due to the action and/or inaction of the chief policymaker(s) for Smith County regarding jail policies, practices, customs, and/or culpable conduct.  Such policies, practices, customs, and/or culpable conduct alleged in this pleading, individually and/or working together, and whether supporting episodic acts and omission and/or conditions of confinement claims, were moving forces behind and caused the constitutional violations, and damages and death, referenced herein. These policies, practices, customs, and/or culpable conduct are pled individually and alternatively.

99.    The County initiated a practice of diverting emergency care situations as a cost-saving measure, either to Turn Key or through alternative means, before a final decision was made on whether an inmate required transfer to an emergency care hospital. When announcing the recent signing of a new inmate contract with Turn Key Health Clinics, Smith County Sheriff Larry Smith mentioned that although the County was paying a slightly higher amount, savings would be realized in other areas. Specifically, he stated, "We've cut down on the number of inmates that go to the emergency room, which was a big deal, a big price

tag."[21] This delay became apparent in the County's newspaper announcement, where they revealed a significant reduction in emergency care calls after engaging Turn Key. This reduction could only be attributed to a decrease in actual emergency situations, which is unlikely, or the diversion of medical care to Turn Key or another alternative before a decision was made on the necessity of hospitalization. This practice was consistently applied in each instance, irrespective of the severity of the required treatment and resulted in significant delays in emergency treatment for medical cost saving reasons.

100. Smith County had a non-delegable duty to provide health care that was constitutionally sufficient.[22] The chief policymaker for the jail was Sheriff Larry R. Smith at all relevant times and thus his policies are attributable to Defendant Smith County and on information and belief said policies were also endorsed by Smith County Judge Nathaniel Moran as well as the Smith County Commissioner's Court.

101. The County knew, when the County incarcerated the decedent, that their personnel, policies, practices, customs and/or culpable conduct were such that they could not meet the required constitutional obligations to provide medical and mental health treatment to, and protect, the decedent. The County made decisions about policies and practices which it implemented through its Commissioner's Court, its Sheriff, its jail administrator, and/or through such widespread practice and/or custom that such practice and/or custom became the policy of the Commissioner's Court as it related to its jail including issues related to staffing and budgets.

102. On information and belief Defendants Turn Key, who contracted with Smith

---

[21] https://www.kltv.com/2021/01/25/smith-county-jail-signs-new-contract-inmate-medical-services/
[22] See *West v. Atkins*, 487 U.S. 42, 54-57 (1988)

County, and/or Defendants Dimaculanga and Ellis, who contracted with and/or were employed by Turn Key to provide detainee/inmate medical services, engaged in an ongoing practice of ignoring detainee/inmate medical needs.  The conduct of Defendants Turn Key and/or Defendants Dimaculanga and Ellis was well known to Smith County policymakers. Defendants Dimaculanga and Ellis rarely made personal contact with detainee/inmates who requested medical services

103.   Smith County policymakers were aware at all times relevant that the services provided by Defendants Turn Key and/or Defendants Dimaculanga and Ellis would be undertaken by either (1) registered nurse Defendant Dimaculanga or (2) registered nurse Defendant Ellis.

104.   Smith County policymakers at all times relevant were aware that Defendants Turn Key and/or Defendants Dimaculanga and Ellis were without sufficient staff to meet the medical needs of the detainee/inmate population of its jail.

105.   As set out in the factual allegations above, Defendant Sheriff Larry Smith was aware of the substandard medical care that was being provided to the inmates/detainees in his jail yet failed to take action to remedy said substandard medical care.

106.   After Mr. Newman's death, Smith County policymakers made no admission of error and vehemently defended themselves against allegations of wrongdoing and continue to do so to this day.

107.   Defendants Turn Key was organized by Defendants Dimaculanga and Ellis, to provide medical health services to Texas jails that are under a legal requirement to provide medical care to inmates.  Defendants Turn Key are private for-profit correctional healthcare companies based in Oklahoma and doing business in Texas, whose members consist, either

directly or derivatively, of Defendants Dimaculanga and Ellis.

108.    The failures of Defendants Dimaculanga and Ellis and jail staff preceded Mr. Newman's death. A Texas Jail Standards Commission inspection report related to an inspection of the Smith County Jail that occurred February 22, 2022, noted several deficiencies in June 2021 through the date of the inspection, which revealed the jail failed to comply with the jail standards for supervision of inmates and failed to complete the Screening Form for Suicide and Medical/Mental/Developmental Impairments of inmates in its entirety. *See* Ex. H: February 18, 2022 Smith County Jail Inspection Report and Death in Custody Report.

### TEXAS COMMISSION ON JAIL STANDARDS - INSPECTION REQUIREMENTS REVIEW



Michael Gravitt, TCJS Inspector

Facility Name:  Smith County Jail                                    Date:    February 18, 2022

| Chapter | Title | Comments |
|---|---|---|
| 259 | New Construction | Conducted a walk through of the facility. |
| 261 | Existing Construction | Not applicable. |
| 263 | Life Safety | Inspected life safety equipment and conducted and observed emergency drill. Reviewed documentation. Conducted staff interviews. Deficiency noted, see report. Technical assistance provided - Smith County was provided Technical Assistance during their June 2021 annual inspection for failing to properly document required quarterly life safety training for staff. Requested follow-up documentation revealed that Smith County failed to document life safety training for 34 staff members during the 2nd quarter of 2021 and 33 staff members during the 3rd quarter of 2021. Follow-up action required - Smith County will provide required documented quarterly life safety training to this inspector for the 4th quarter of 2021 within the next 10 days. Smith County will also continue to provide this inspector with required documented quarterly life safety training for 2022 no later than 5 days following the end of each quarter until further notice. |
| 265 | Admission | Reviewed a random sample of 0 inmate files.  Interviewed staff. Reviewed policy. |
| 267 | Release | Reviewed a random sample of 0 inmate files.  Interviewed staff. |
| 269 | Records/Procedures | Reviewed policy and documentation. Interviewed staff and reviewed ADA compliance evaluation. |
| 271 | Classification | Reviewed a random selection of 0 files. Reviewed training records. |
| 273 | Health Services | Reviewed a random selection of 0 files. Interviewed staff and inmates. Reviewed training records. Reviewed policy. Deficiency noted, see report. Technical assistance provided - 1) Smith County was provided Technical Assistance during their June 2021 annual inspection for failing to notify the magistrate within 12 hours, in accordance with Art. 16.22 of the Code of Criminal Procedure, when required by positive responses on the Continuity of Care Query (CCQ) or affirmative answers on the Screening Form for Suicide and Medical/Mental/Developmental Impairments. 1.) A review of requested documentation revealed that Smith County continued to fail to notify the magistrate when warranted by positive responses on the CCQ or affirmative answers on the Screening Form for Suicide and Medical/Mental/Developmental Impairments on multiple occasions. 2.) Additionally, requested follow-up documentation revealed that Smith County in some instances when the magistrate was notified, they exceeded the 12 hour time frame anywhere from 20 minutes to 8 hours on multiple occasions. |
| 273 | Health Services (cont.) | 3.) Smith County was provided Technical Assistance during their June 2021 annual inspection for failing to complete the Screening Form for Suicide and Medical/Mental/Developmental Impairments in its entirety. Requested follow-up documentation revealed that Smith County has not corrected the issue of completing the Screening Form for Suicide and Medical/Mental/Developmental Impairments in its entirety. Missing information includes the date/time the form was completed, questions being answered, missing notification information, missing CCQ information, and missing signatures. Follow-up action required - Within 30 days, Smith County will provide documented training to staff on the requirements of Art. 16.22 of the Code of Criminal Procedure, and the importance of completing the Screening Form for Suicide and Medical/Mental/Developmental Impairments in its entirety to this inspector.  Smith County will also provide Screening Forms for Suicide and Medical/Mental/Developmental Impairments, CCQ returns and documented magistrate notifications to this inspector weekly on Fridays until further notice. |
| 275 | Supervision | Reviewed a random selection of 0 jailer TCOLE certification records. Reviewed jailer documentation.  Interviewed staff. |
| 277 | Personal Hygiene | Conducted a facility walk through. Reviewed facility schedule. |
| 279 | Sanitation | Conducted a facility walk through. Interviewed staff and inmates. Reviewed policy. |
| 281 | Food Service | Conducted walk through inspection in kitchen area. Interviewed staff. Reviewed documentation. |
| 283.1 | Discipline | Reviewed 0 disciplinary hearing records. Interviewed staff and inmates. Reviewed policy. Reviewed inmate rules. |
| 283.3 | Grievance | Reviewed 0 inmate grievance/complaints. Reviewed policy. Interviewed staff and inmates. |

RECEIVED
FEB 2 3 2022
TEXAS COMMISSION
ON JAIL STANDARDS

109.   Federal courts have defined a "serious medical need" as one so obvious that even

a lay person would easily recognize necessity for doctor's attention.[23]  In this case there is no doubt that the jail staff (and even detainees and inmates) knew that Mr. Newman was suffering from a serious medical condition.  Based on information and belief, Smith County jailers were, as a matter of policy, instructed not to call for emergency treatment of detainee/inmate's suffering from obvious serious medical conditions without medical staff approval.

## I.   Federal Constitutional Violations (as to Defendant Smith County)

110.   Plaintiff incorporates by reference "Factual Allegations" above as if restated herein.

111.   The actions and/or omissions of Defendant Smith County were taken with deliberate indifference to Mr. Newman's known constitutional rights not to be deprived of life or liberty without due process of law under the Fourteenth Amendment.  Such actions, omissions and/or deprivations of Defendant Smith County were made with deliberate indifference to Mr. Newman's serious medical needs.

112.   Defendant Smith County's actions and/or omissions resulted in the violation of Mr. Newman's constitutional right to due process under the Fourteenth Amendment. Mr. Newman had a right to be safe and the right to have timely access to necessary and appropriate medical evaluation and/or treatment. Defendant Smith County's failures include, but are not limited to, the following:

   a.   failure to take reasonable or appropriate precautions to prevent Mr. Newman's death;

   b.   failure to heed to Mr. Newman's request for his medications, and for a doctor and for hospital treatment[24]

---

[23] See *Laaman v. Helgemoe*, 437 F.Supp. 169 (D.N.H. 1977)
[24] It is without issue that the Smith County Jail has no capability to provide emergency or critical health care.

c.      failure to provide appropriate medical evaluation and/or treatment to Mr. Newman to address his known, obvious medical condition(s);

d.      failure to provide adequately trained medical personnel;

e.      failure to transport Mr. Newman to an appropriate medical facility or health care provider for further medical evaluation and/or treatment; and

f.      instituting a policy that prevented Mr. Newman from being timely transported to an appropriate medical facility or health care provider for further medical evaluation and/or treatment of his serious medical condition.

113.   All of Defendant Smith County's actions and/or omissions were in deliberate indifference to Mr. Newman's constitutional rights.

**J.   Federal Constitutional Violations (as to Defendant Larry R. Smith, Individually)**

114.   Plaintiffs incorporate by reference the "Factual Allegations" above as if restated herein.

115.   The actions and/or omissions of Defendant Smith were taken with deliberate indifference to Mr. Newman's known constitutional rights not to be deprived of life or liberty without due process of law under the Fourteenth Amendment.  Such actions, omissions and/or deprivations of Defendant Smith were made with deliberate indifference to Mr. Newman's serious medical needs.

116.   Defendant Smith's actions and/or omissions resulted in the violation of Mr. Newman's Fourteenth Amendment Constitutional right to due process.  While incarcerated, Mr. Newman had a right to be safe and the right to have timely access to necessary and appropriate medical evaluation and/or treatment. Defendant Smith's failures include, but are not limited to, the following:

a.      failure to take reasonable or appropriate precautions to prevent Mr. Newman's death;

      b.       failure to provide appropriate medical evaluation of Mr. Newman's known, obvious medical conditions;

      c.       failure to provide treatment to Mr. Newman to address his known, obvious medical condition(s);

      d.       failure to provide adequately trained medical personnel;

      e.       failure to transport Mr. Newman to an appropriate medical facility or health care provider for further medical evaluation and/or treatment; and

      f.       instituting a policy that prevented Mr. Newman from being timely transported to an appropriate medical facility or health care provider for further medical evaluation and/or treatment of his serious medical condition.

### K.  Federal Constitutional Violations (as to Defendants TURN KEY)

117.    Plaintiffs incorporate by reference the "Factual Allegations" above as if restated herein.

118.    The actions and/or omissions of Defendants Turn Key were taken under color of state law pursuant to the authority delegated by Smith County and with deliberate indifference to the known Constitutional right of Mr. Newman to not be deprived of life or liberty without due process of law guaranteed by the Fourteenth Amendment.  Such actions, omissions and/or deprivations of Defendants Turn Key were made with deliberate indifference to Mr. Newman's serious medical needs.

119.    Defendants Turn Key's failures include, but are not limited to, the following:

      a.       failure to take reasonable or appropriate precautions to prevent Mr. Newman's death;

      b.       failure to provide appropriate medical evaluation and/or treatment to Mr. Newman to address his known, obvious medical condition(s);

      c.       failure to transport Mr. Newman to an appropriate medical facility or health care provider for further medical evaluation and/or treatment; and

> d.      failure to provide adequate training and supervision for nurses Dimaculanga and Ellis.

## L.   Federal Constitutional Violations (as to Defendant Dimaculanga)

120.    Plaintiffs incorporate by reference the "Factual Allegations" above as if restated herein.

121.    The actions and/or omissions of Defendant Dimaculanga were taken under color of state law pursuant to the authority delegated by Smith County and with deliberate indifference to the known constitutional right of Mr. Newman to not be deprived of life or liberty without due process of law guaranteed by the Fourteenth Amendment.  Such actions, omissions and/or deprivations by Defendant Dimaculanga were made with deliberate indifference to Mr. Newman's serious medical needs.

122.    Defendant Dimaculanga's failures include, but are not limited to, the following:

> a.      failure to take reasonable or appropriate precautions to prevent Mr. Newman's death;

> b.      failure to provide appropriate medical evaluation and/or treatment to Mr. Newman to address his known, obvious medical condition(s);

> c.      failure to transport Mr. Newman to an appropriate medical facility or health care provider for further medical evaluation and/or treatment; and

> d.      adhering to a policy that prevented Mr. Newman from being timely transported to an appropriate medical facility or health care provider for further medical evaluation and/or treatment of his serious medical condition.

123.    All of Defendant Dimaculanga's actions and/or omissions were taken in deliberate indifference to Mr. Newman's constitutional rights.

## M. Federal Constitutional Violations (as to Defendant Ellis)

124.    Plaintiffs incorporate by reference the "Factual Allegations" above as if restated

herein.

125.    The actions and/or omissions of Defendant Ellis were taken under color of state law pursuant to the authority delegated by Smith County and with deliberate indifference to the known constitutional right of Mr. Newman to not be deprived of life or liberty without due process of law guaranteed by the Fourteenth Amendment.  Such actions, omissions and/or deprivations by Defendant Ellis were made with deliberate indifference to Mr. Newman's serious medical needs.

126.    Defendant Ellis's failures include, but are not limited to, the following:

   a.    failure to take reasonable or appropriate precautions to prevent Mr. Newman's death;

   b.    failure to provide appropriate medical evaluation and/or treatment to Mr. Newman to address his known, obvious medical condition(s);

   c.    failure to transport Mr. Newman to an appropriate medical facility or health care provider for further medical evaluation and/or treatment; and

   d.    adhering to a policy that prevented Mr. Newman from being timely transported to an appropriate medical facility or health care provider for further medical evaluation and/or treatment of his serious medical condition.

127.    All of Defendant Ellis's actions and/or omissions were taken in deliberate indifference to Mr. Newman's constitutional rights.

### N. Federal Constitutional Violations (as to Defendants Shoemaker, Vallejo-Robles, Vega, Velaquez, and Washington)

128.    Plaintiffs incorporate by reference the "Factual Allegations" above as if restated herein.

129.    The actions and/or omissions of Defendants Shoemaker, Vallejo-Robles, Vega, Velaquez, and Washington were taken under color of state law and with deliberate

indifference to the known constitutional right of Mr. Newman to not be deprived of life or liberty without due process of law guaranteed by the Fourteenth Amendment.  Such actions, omissions and/or deprivations by Defendants Shoemaker, Vallejo-Robles, Vega, Velaquez, and Washington were made with deliberate indifference to Mr. Newman's serious medical needs.

130.    Defendants   Shoemaker's,   Vallejo-Robles's,   Vega's,   Velaquez's,   and Washington's failures include, but are not limited to, the following:

a.    failure to provide for the transport of Mr. Newman to an appropriate medical facility or health care provider for further medical evaluation and/or treatment; and

b.    adhering to a policy that prevented Mr. Newman from being timely transported to an appropriate medical facility or health care provider for further medical evaluation and/or treatment of his serious medical condition.

131.    All of Defendants Shoemaker's, Vallejo-Robles's, Vega's, Velaquez's, and Washington's actions and/or omissions were taken in deliberate indifference to Mr. Newman's constitutional rights.

132.    The United States Court of Appeals for the Fifth Circuit has held that using a State's wrongful death and survival statutes creates an effective remedy for civil rights claims pursuant to 42 U.S.C. § 1988.[25] Therefore, Plaintiffs individually, representatives of the Estate of Mr. Newman and as the heirs of Mr. Newman, seek all remedies and damages available under Texas and federal law, including but not necessarily limited to the Texas wrongful death

---

[25] *See Pluet v. Frasier,* 355 F.3d 381, 383 (5th Cir.2004) (citing *Rhyne,* 973 F.2d at 390–91; *Brazier v. Cherry,* 293 F.2d 401, 409 (5th Cir.1961)) ("Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits. Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988." (citations omitted)); *Grandstaff v. City of Borger, Tex.,* 767 F.2d 161, 172 (5th Cir.1985).

statute, the Texas survival statute, the Texas Constitution, common law, and all related and/or supporting case law.  If Mr. Newman had lived, he would have been entitled to bring a 42 U.S.C. § 1983 action and obtain remedies and damages provided by Texas and federal law. Therefore, Mr. Newman's estate and/or his heirs at law suffered the following damages, for which they seek recovery from all Defendants:

  a. Mr. Newman's conscious physical pain, suffering, and mental anguish;

  b. Mr. Newman's medical expenses;

  c. Mr. Newman's funeral expenses; and

  d. Punitive damages.

133. Individual Plaintiffs, on their own behalf, seek damages for pecuniary and non-pecuniary losses proximately caused by Mr. Newman's death by the reckless disregard to the safety and well-being of inmates and the deliberate indifference of all Defendants, their agents, employees, and subcontractors, including mental anguish resulting from destruction of the husband-wife, son-mother, father-daughter, father-son relationship as to each individual Plaintiff including but not limited to the following:

  a. loss of services that they would have received from Mr. Newman;

  b. past physical pain, mental anguish and emotional distress suffered by them resulting from and caused by Mr. Newman's death;

  c. future physical pain, mental anguish and emotional distress suffered by them resulting from and caused by Mr. Newman's death;

  d. loss of companionship, society, joy, solace, company and advice that they would have received from Mr. Newman; and

  e. exemplary/punitive damages.

134. Exemplary/punitive damages are appropriate in this case (from all Defendants

with the exception of Smith County) to deter and punish the clear and unabashed violations of Mr. Newman's constitutional rights. The Defendants' actions and/or inaction showed intentional, deliberate, reckless and callous disregard of, and indifference to, Mr. Newman's health, rights, safety and life. In addition, all such damages resulted from the Defendants choosing to proceed with intentional, deliberate, reckless and callous disregard of Mr. Newman's rights, safety, or welfare after having an actual subjective awareness of the risk involved but nevertheless proceeding with actions resulting in his injuries and death. The Defendants' actions, when viewed objectively from their standpoint at the time of the acts and/or omissions involved, resulted in an extreme degree of risk, considering the probability and magnitude of potential harm to Mr. Newman. Moreover, all Plaintiffs (and referenced heirs) seek from the Defendants (including Smith County) reasonable and necessary attorneys' fees available pursuant to 42 U.S.C. §§ 1983 and 1988.

**O.  <u>Withholding of Records</u>**

135.   In addition to the civil rights violations, Defendant Smith County has blocked and refused the release of Mr. Newman's video of his time during solitary confinement until the time of his death during his incarceration in the Smith County Jail, and the full and complete set of medical records of Mr. Newman in the Smith County Jail. The requests were made properly, through a Public Information Act request, and pursuant to the Public Information Act, with the required HIPPA Release. However, the records have not been released.

## VII. CLAIMS FOR RELIEF

### A. FIRST CLAIM – 42 U.S.C. §1983 – SHERIFF LARRY R. SMITH, SMITH COUNTY, JAILERS SHOEMAKER, VALLEJO-ROBLES, VEGA, VELAQUEZ, AND WASHINGTON AND SMITH COUNTY JAILERS JOHN DOE 1-20, DEPRIVED TORRY LAMONT NEWMAN OF RIGHTS, PRIVILEGES AND IMMUNITIES SECURED BY THE FOURTEENTH AND EIGHTH AMENDMENTS

136.    Plaintiffs incorporate by reference all of the preceding paragraphs. Sheriff Larry R. Smith, Smith County and any John Doe jailers and policymakers have acted under color of state law.

a.    Defendant, Smith County

137.    Smith County is a unit of local government organized under the laws of the State of Texas.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

138.    Smith County is a unit of local government who created, adopted, approved, ratified, maintained, and enforced the rules, regulations, policies, practices, procedures, and/or customs of the Smith County Sheriff's Office and the Smith County Jail. Smith County sanctioned, approved, directed, encouraged, and knowingly consented to the unconstitutional conduct at issue in this case, including the failure to give Mr. Newman adequate medical care and his prescription medications of Metoprolol Tartrate, Prednisone, Montelukast, Amlodipine Besylate, Albuterol Sulfate, and Budesonide and Formoterol Fumarate Dihydrate regimen by the lower-level employees, and contractors specifically stated above.

139.    Smith County had direct involvement in the decisions regarding inmate housing, inmate medical care, and Jail policies. It made no provisions for proper medical care for inmates that were placed into Detox and separation cells.  When the Sheriff deemed separation

necessary, the County would fail to monitor or had inadequate monitoring of inmates who had known chronic medical conditions. Its administrators and policymakers directing and encouraging separation/solitary confinement knew and it was reasonably foreseeable that these inmates would likely suffer severe symptoms from the County's failure to provide adequate medical care and necessary prescription medications.

140.    Smith County's policies, practices, and/or customs were moving forces behind, caused, were proximate causes of, and were producing causes of, constitutional violations and resulting damages (including death) referenced in this pleading.

141.    Plaintiffs plead facts which give rise to, and thus assert, conditions of confinement claims arising from policies, practices, and/or customs working individually, or in the alternative, together, to cause the decedent's death and all other damages asserted in this pleading.  Conditions of confinement claims require no deliberate indifference on behalf of a governmental entity or governmental actor.  In the alternative, Plaintiffs plead facts which give rise to episodic acts and/or omissions claims arising from policies, practices, and/or customs.

142.    Plaintiffs plead the following Smith County policies, practices, and customs, which give rise to the conditions of confinement claims, or in the alternative episodic acts and/or omissions claims:

- Smith County failed to implement the policies, procedures, and practices necessary to provide constitutionally adequate mental health treatment, and medical services to Torry Lamont Newman during his incarceration in the Smith County Jail and implementing policies, procedures, and practices which actually interfered with or prevented Torry Lamont Newman from receiving mental health treatment and medical services.

- Smith County failed to monitor or in the alternative had inadequate monitoring of inmates.

- Smith County failed to implement adequate policies or procedures to provide proper medical care for inmates like Torry Lamont Newman who suffer from chronic medical conditions requiring ongoing coordinated care and treatment to prevent the progression of their illnesses. At all relevant times, there were no or inadequate policies, procedures or chronic care guidelines that were used at the Smith County Jail for the management of chronic illnesses.

- Smith County failed to implement adequate policies or procedures regarding delivery of medications, so that there was deficient medication administration at the Jail. Inmates like Torry Lamont Newman were not provided their medications in accordance with prescriptions, and the Jail failed to follow general standards of care to monitor the inmates' prescribed medication regimens.

- Smith County failed to reprimand and/or take remedial action against employees and/or agents as a result of the action and/or inaction related to Torry Lamont Newman's death, thus confirming that the policies, practices, and/or customs which led to such suffering and death were in fact de facto policies of Smith County.

- Smith County, while knowing that inmates needed immediate in-patient mental health care, would incarcerate such individuals in lieu of obtaining such needed care.

- Smith County had direct involvement in the decisions regarding inmate housing, medical care, and policies and made no provisions for inmates with mental illness who were refusing to take prescription medication for serious medical conditions and knew it was reasonably foreseeable that these inmates would likely suffer medical complications, symptoms and events from these severe medical conditions requiring medical attention, and it would be a foreseeable result for inmates to die from these untreated severe medical conditions.

- Smith County while monitoring inmates, failed to take action based upon material information obtained during monitoring regarding serious physical and/or mental health issues. This due in part, as may be true with other potential policies, practices, and/or customs, to attempt to save costs.

- Smith County had unconstitutional policies in place for serious mentally ill inmates and instead of having such inmates transferred to an appropriate in-patient mental health facility for needed treatment, Smith County would continue to incarcerate or allow incarceration of such persons.

- Smith County would take action designed to save the County money, by failing

or refusing to properly and adequately staff its jail and train its staff to properly supervise and monitor inmates, especially those inmates with serious medical and mental illnesses.

- Smith County would take action designed to save the County money, by failing and/or refusing to send for needed inpatient mental health treatment, and/or to a local emergency room, inmates who vitally needed such care.

- Smith County failed to provide and/or delayed providing medical and/or mental health treatment to inmates.

- Smith County rather than providing mental health treatment, simply obtained mental health evaluations of inmates without obtaining corresponding needed mental health treatment.

- Smith County rather than providing reasonable and necessary medical care simply placed inmates on watch lists, yet failed to properly monitor those inmates.

143.   The policies, practices, and/or customs referenced above, as well as the failure to adopt appropriate policies were moving forces behind and caused violations of decedent's rights and showed deliberate indifference to the known or obvious consequences that constitutional violations would occur.  The County was deliberately indifferent to, and acted in an objectively unreasonable manner regarding Torry Lamont Newman's constitutional rights. The County's relevant policies, practices, and/or customs, whether written or not, were also objectively unreasonably applied to the decedent.

144.   Smith County's policy, practice, and/or custom of understaffing its jail was a moving force behind and caused Torry Lamont Newman's death.  Smith County made a conscious decision to understaff its jail, and that decision, which was a or resulted in a policy, practice, and/or custom, was a moving force behind and caused Torry Lamont Newman's death.

145.   The County policymakers failed to develop and institute adequate reality-based

training programs relating to the incarceration, care, and treatment of individuals such as Torry Lamont Newman who had pre-existing chronic medical conditions and mental illness. As such, the County's policymakers were indifferent to the serious medical and mental needs of inmates such as Torry Lamont Newman.

146.   In the alternative, without waiving any of the other causes of action pled herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, Defendant Smith County is liable to Plaintiffs pursuant to 42 U.S.C. § 1983, for depriving Torry Lamont Newman of his rights, privileges, and immunities guaranteed by the Fourteenth Amendment to the U.S. Constitution, including but not limited to the right to be protected and the right to adequate medical care when incarcerated.

b.  Defendants, Jailers Shoemaker, Vallejo-Robles, Vega, Velaquez, and Washington, and John Doe Smith County Jailers # 1-20

147. Defendants  Jailers  Shoemaker,  Vallejo-Robles,  Vega,  Velaquez,  and Washington, and John Doe Smith County Jailers # 1-20 are employed by Smith County. Jailers Shoemaker, Vallejo-Robles, Vega, Velaquez, and Washington and John Doe Jailers # 1-20 are sued in their "personal or individual capacity, acting under color of law."  Each jailer individually, in combination, and collectively demonstrated deliberate indifference to the serious medical needs of Torry Lamont Newman and at all times relevant to this case acted under color of law.

148. Each jailer individually, in combination, and collectively directed and encouraged the isolation of inmates on any Metoprolol Tartrate, Prednisone, Montelukast,

Amlodipine Besylate, Albuterol Sulfate, and Budesonide and Formoterol Fumarate Dihydrate regimen.

149. Each jailer individually, in combination, and collectively sanctioned, approved, directed, encouraged, and knowingly consented to the unconstitutional conduct including the failing to give adequate medical care and prescription medication of Metoprolol Tartrate, Prednisone, Montelukast, Amlodipine Besylate, Albuterol Sulfate, and Budesonide and Formoterol Fumarate Dihydrate regimen by the lower-level employees, and contractors specifically stated above.

150. Each jailer individually, in combination, and collectively had direct involvement in the decisions regarding inmate housing, medical care. It made no provisions for inmates that he required to be placed in a separation cell, although it's administrators, and policy makers directing and encouraging separation/solitary confinement protocol knew and it was reasonably foreseeable that these inmates would likely suffer severe symptoms due to failure to give adequate medical care and necessary prescription medication, necessitating medical attention, and it would be a foreseeable result, for inmates who had chronic medical conditions and were prescribed medication such as, Metoprolol Tartrate, Prednisone, Montelukast, Amlodipine Besylate, Albuterol Sulfate, and Budesonide and Formoterol Fumarate Dihydrate medication or any other substances that the sheriff deemed separation necessary but would fail to monitor or in the alternative had inadequate monitoring of inmates.

151. As specifically stated above. Smith County, Sheriff Larry Smith, Jailers Shoemaker, Vallejo-Robles, Vega, Velaquez, and Washington, Smith County Jailers John Doe 1-20, Smith County Jail's Contracted Medical Providers Turn Key Health Clinicians, PLLC and/or Turn Key Health Clinics, PLLC, and Defendants Dimaculanga and Ellis,

individually, and collectively deprived Torry Lamont Newman of rights, privileges and immunities secured by the Fourteenth and Eighth Amendments to the U.S. Constitution including, but not limited to the right to be free from cruel and unusual punishment, the right to be protected, and the right to adequate medical care when incarcerated.

152. Defendants, Smith County, Sheriff Larry Smith, Jailers Shoemaker, Vallejo-Robles, Vega, Velaquez, and Washington, John Doe Smith County Jailers 1-20, Turn Key Health Clinicians, PLLC, Turn Key Health Clinics, LLC, Defendants Dimaculanga and Ellis, and John Does Medical Providers 1-5 individually, and collectively failed to adequately train and supervise the Jail corrections officers, medical personnel, and staff at the intake, assessment and correctional and medical care of inmates who arrive at the jail while taking prescription drugs, including Torry Lamont Newman's Metoprolol Tartrate, Prednisone, Montelukast, Amlodipine Besylate, Albuterol Sulfate, and Budesonide and Formoterol Fumarate Dihydrate prescription.

153. The rules, regulations, customs, policies and procedures of Smith County Jail and Sheriff Larry R. Smith were inadequate and unreasonable and were the moving force behind the constitutional deprivations suffered by Torry Lamont Newman.

154. Although the policymakers were on notice of the obvious need to train and supervise Jail staff in the area of day-to-day Jail operations, policies and procedures relating to medical and mental health assessment and follow up care of inmates, Sheriff Larry R. Smith, Smith County, and any John Doe policy makers failed to adequately train and supervise the individual Jail staff in that regard.

155. The policy makers failed to develop and institute adequate reality-based training programs relating to the incarceration, care and treatment of individuals such as Torry Lamont

Newman who had pre-existing medical conditions. As such, Sheriff Larry R. Smith, Smith County, and any John Doe policy makers were deliberately indifferent to the serious medical needs of Torry Lamont Newman.

156.   The policy makers developed and instituted a policy against proper care and treatment of individuals with asthma, such as Torry Lamont Newman, who had pre-existing medical need and condition. As such, Sheriff Larry R. Smith, Smith County, and any John Doe policy makers were deliberately indifferent to the serious medical needs of Torry Lamont Newman.

## B.  <u>SECOND CLAIM-VIOLATION OF ARTICLE ONE SECTION THIRTEEN OF THE TEXAS CONSTITUTION.</u>

157.   Plaintiffs incorporates by reference all of the preceding paragraphs. Defendants were acting under color of state law; the defendants are liable under as well as, violation of Article One Section Thirteen of the Texas Constitution that cruel or unusual punishment shall not be inflicted.

158.   The Defendants are liable under Article One Section Thirteen of The Texas Constitution that cruel or unusual punishment shall not be inflicted, because they deprived Torry Lamont Newman of constitutional rights provided by federal and state law that occurred under color of state law, and were caused by state actors.

159.   Torry Lamont Newman had a right under the Eighth Amendment and the Due Process Clause, and as well as, Article One Section Thirteen of The Texas Constitution while incarcerated to adequate medical care, and be free from deliberate indifference to his serious medical needs.

160.   The Defendants treated Torry Lamont Newman with deliberate indifference to

his serious medical need especially for treatment of severe asthma, when Defendants recklessly disregarded the substantial risk of harm Mr. Newman would suffer from their failure to give him necessary prescription medication long-term to treat his known chronic medical conditions.

161.   Torry Lamont Newman had a right to be free of cruel and unusual punishment. Defendants violated when Sheriff Larry R. Smith, Smith County, Smith County Jail, and any John Doe policy makers and acted with deliberate indifference to his serious medical need, in failing to verify his treatment with his physician and ensure he received his medication, in failing to transport him to the hospital, or release him from custody. Smith County's post-deprivation procedures are inadequate to remedy the deprivation, since Torry Lamont Newman died as a result of the deprivation.

**A.  THIRD CLAIM – MEDICAL NEGLECT IN VIOLATION OF 42 U.S.C. § 1983**

162.   All preceding paragraphs are incorporated here by reference.

163.   At all times material to this Complaint, Smith County and Turn Key, nurses, and the John Doe medical providers acted under color of the statutes, customs, ordinances, and usage of the State of Texas and Smith County.

164.   Smith County has a non-delegable duty under Texas law and the U.S. constitution to provide medical care to inmates at its Jail.  The County cannot absolve itself of this duty by simply paying someone else to carry it out.

165.   Likewise, by accepting the contract with Smith County, Turn Key has taken on that same duty to meet the standard of care in its provision of medical services at the Jail.

166.   Smith County's policymaker with authority over the Jail is its Sheriff, or alternatively, the Commissioners Court.  The Smith County policymaker was fully aware of

the contents of the County's contract with Turn Key, which specified required staffing and made obvious the reliance on untrained correctional officers to recognize and respond to medical emergencies.

167.    Management at Turn Key has policymaking authority over the policies described in this lawsuit and utilized at the Smith County Jail.  The Chief Executive Officer, or in the alternative, the Chief Operating Officer has policymaking authority for policies of the type alleged in this lawsuit.  Alternatively, Turn Key, as a single private entity, is itself a "policymaker" for purposes of § 1983 liability.

168.    The policies described in this Complaint are the product of both Smith County and Turn Key, which collaborated and agreed on exactly how the provision of medical care at the Jail was to be carried out.

169.    Acting under color of law, Defendants Smith County and Turn Key deprived Torry Lamont Newman of the rights and privileges secured to him by the Eighth and/or Fourteenth Amendments to the United States Constitution and by other laws of the United States by failing to provide constitutionally adequate medical treatment.  Plaintiffs plead their case under the alternative theories of conditions of confinement and episodic acts or omissions.[26]

170.    The constitutionally inadequate system of medical care – the conditions at the Smith County Jail – caused Torry Lamont Newman to suffer a deprivation of his constitutional rights. These conditions of Torry Lamont Newman's confinement as set forth in this Complaint were not reasonably related to a legitimate governmental purpose.  Smith

---

[26] Plaintiffs may plead the alternative theories of conditions of confinement and episodic acts or omissions in a jail medical care case under 42 U.S.C. § 1983.  *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009).

County's and Turn Key's intent to punish Torry Lamont Newman may be inferred from their decision to expose inmates such as his to an unconstitutional condition.  In other words, an official intent to punish may be inferred from general conditions, practices, rules, or restrictions of confinement.

171.   Smith County and Turn Key are liable to Plaintiffs under 42 U.S.C. § 1983 for creating, maintaining, and perpetuating the conditions of confinement that resulted in the constitutionally inadequate medical care at its Jail.

172.   The challenged conditions set forth in this Complaint violated Torry Lamont Newman's constitutional rights and were the foreseeable product of the Smith County's and Turn Key's decision to provide insufficient medical staff the Jail.  There is no doctor on site, and the nurses frequently fail to physically examine an inmate who submits a request for care. Instead, the Jail relies on non-medical correctional staff to identify and respond appropriately to emergencies.

173.   However, Smith County and Turn Key did not sufficiently train and/or supervise their staff at the Jail, including non-medical correctional officers, to ensure that they were able to recognize and respond to emergencies properly.

174.   The above policies, either individually or in combination, prevent an inmate at the Smith County Jail from having access to medical care.  None of these policies have a legitimate penological goal.  Preventing an inmate's access to medical care cannot be seen as anything other than an unconstitutional punishment and is therefore an unlawful condition of confinement.

175.   In the alternative, Smith County and Turn Key are liable because the policies, customs or practices described above, including a failure to train and/or supervise their

employees, were the moving force behind episodic acts or omissions which resulted in violations of Torry Lamont Newman's constitutional rights and caused the harm described in this lawsuit.

176.  By their actions and/or inactions as described above, Defendants Smith County and Turn Key have violated 42 U.S.C. § 1983 and the constitutional provisions cited in this Complaint.

**B.  FOURTH CAUSE OF ACTION: NEGLIGENCE**

177.  All preceding paragraphs are incorporated herein by reference.

178.  Defendant Turn Key, as the contracted medical provider for Smith County Jail, had a duty to provide competent medical care to Torry Lamont Newman while he was incarcerated at the jail.

179.  Turn Key breached this duty through the actions and/or omissions of its employees, who abjectly failed to meet the standard of care in providing medical services to Torry Lamont Newman.

180.  Turn Key' actions and/or inactions were the cause-in-fact of Torry Lamont Newman's death.

181.  Torry Lamont Newman's death was the foreseeable consequence of failing to provide any medical care whatsoever despite numerous signs, exhibited over a period of weeks, that he was gravely ill.

182.  Turn Key can be presumed to have been negligent under a theory of negligence *per se,* because it participated in the unlicensed provision of medical care at the Jail.  This violation of law proximately caused Torry Lamont Newman's death, which is precisely the

type of harm Texas medical licensing statutes are designed to protect people from.

### *Gross Negligence*

183.   Instituting a system of medical care at the Smith County Jail as described above involved an extreme degree of risk, considering the probability and magnitude of the potential harm to inmates at the Jail.

184.   Turn Key had actual, subjective awareness of this precise risk from its experience with Torry Lamont Newman's intake sheet and medical questionnaire, but consciously ignored this risk.

185.   Newman, the deceased, has a serious medical need and the failure to treat that need was caused and/or significantly contributed to his death. The Defendants, including Turn Key Clinics, Turn Key Clinicians, Defendants Dimaculanga and Ellis, and John Doe 1-5 Medical Providers, were responsible to provide Newman with reasonable adequate medical care by way of state and federal law.

186.   The Defendants were deliberately indifferent to Newman's pain, physical condition and his need for medical treatment.

187.   Due to the lack of care, the Defendants were deliberate indifferent in their failure to provide reasonably adequate medical treatment to Newman at any time during the course of his incarceration.

188.   Defendants were acting under the color of state law when Newman's constitutional rights were being violated.

### C.  WRONGFUL DEATH CAUSE OF ACTION

189.   The above paragraphs are incorporated herein by reference for all purposes.

190.   Sheriff Larry R. Smith, Smith County, Jailers Shoemaker, Vallejo-Robles, Vega,

Velaquez, and Washington, Turn Key Clinics, Turn Key Clinicians, and any John Doe defendants, including the policymakers or its agent's or servants, wrongful actions, neglect, carelessness, unskillfulness or default and omissions in placing Torry Lamont Newman in separation/solitary confinement, failing to give Torry Lamont Newman his prescribed medicine, failing to contact his physicians, and failing to transport him to a hospital with a physician.

191.    Defendants owed the decedent, Torry Lamont Newman, a duty of care to provide him medical care and treatment in the Smith Jail. The Defendants breached that duty by placing Torry Lamont Newman in a separation cell, depriving him of his medication, failing to transport him to a hospital after asthma attacks and not medically monitoring his known medical conditions.

192.    Plaintiffs bring this wrongful death action against Defendants for the death of Torry Lamont Newman for their own damages and for the damages to the other statutory beneficiaries arising from the injuries which caused Newman's death. Defendants are liable as the injuries were caused by their wrongful acts, neglect, carelessness, and by the wrongful act, neglect, and carelessness of their agents and employees as set forth above.

193.    Defendant's acts caused the wrongful death of Torry Lamont Newman resulting in damages recoverable under the Texas Wrongful Death statute.

### D.  SURVIVAL CAUSE OF ACTION

194.    The above paragraphs are incorporated herein by reference for all purposes. As a direct and proximate result of the foregoing, Defendants caused the deceased to suffer injury and death, of which has caused the general damages requested by Plaintiffs in an amount in excess of the applicable jurisdictional amount, to be proven at trial.

195.   The claims and causes of action for injuries to the health and person sustained by the deceased prior to his death are brought in this action pursuant to the Texas Survival Statute.[27]

## VIII. DAMAGES

196.   The above paragraphs are incorporated herein by reference for all purposes.

197.   The United States Court of Appeals for the Fifth Circuit has held that using a State's wrongful death and survival statutes creates an effective remedy for civil rights claims pursuant to 42 U.S.C. § 1988. Therefore, Plaintiffs individually, representatives of the Estate of Torry Lamont Newman and as the heirs of Torry Lamont Newman, seek all remedies and damages available under Texas and federal law, including but not necessarily limited to the Texas wrongful death statute and the Texas survival statute, the Texas Constitution, common law, and all related and/or supporting case law. If Torry Lamont Newman had lived, he would have been entitled to bring a 42 U.S.C. § 1983 action and obtain remedies and damages provided by Texas and federal law.   Therefore, Torry Lamont Newman's estate and/or his heirs at law suffered the following damages, for which they seek recovery from all Defendants.

198.   As a result of the acts and of Defendants as described above, Plaintiffs have suffered severe injuries. Plaintiffs have sustained loss of earnings and loss of earning capacity, past and in the future. Plaintiffs have experienced great mental anguish, and will in all reasonable probability, continue to do so in the future by reason of the nature and severity of

---

[27] *See Rodgers v. Police*, 819 F.3d 205, 210 n.10 (5th Cir. 2016) (holding "Section 1988 incorporates the Texas survival statute, so federal-question jurisdiction extends to the complainant's survival action as well."); *Rhyne,* 973 F.2d at 390 ("This court held that 42 U.S.C. § 1988 incorporated both [the state's] survival statute and [the] wrongful death statute to provide full remedies for violations of constitutional rights.").

their injuries.

199.   The Defendants' conduct demonstrates that Defendants engaged in an unlawful intentional course of conduct with malice and reckless indifference to the federal and state protected rights of the Decedent and Plaintiffs. Defendants acted willfully, intentionally and/or with a reckless and callous indifference to the civil rights of the Decedent. Plaintiffs seek exemplary damages and punitive damages (except against Smith County) in an amount to be determined by the trier of fact.

## A.  Punitive Damages

200.   Plaintiffs request punitive damages against each individually-named defendant. Exemplary damages are based on the conduct of placing Torry Lamont Newman in a separation cell without consulting his medical records or treating physician, and allowing Torry Lamont Newman to continue to suffer daily, experiencing asthma attacks, racing pulse rates, stroke level blood pressure, restlessness, anxiousness, irritability, jitters, agitation, unrestful sleep, confusion, nightmares, tremors, fatigue, muscle aches, chest pain, profuse sweating, urination and diarrhea without access to a toilet and a ultimately a humiliating death without regard to his serious medical needs, while in the custody of the Smith County Jail, that was outrageous, malicious, and morally culpable.

201.   Torry Lamont Newman's death resulted from the acts of Defendants for which Plaintiffs seek punitive and exemplary damages against each individual Defendant (as allowed by law) in an amount appropriate to punish each individual Defendant, and deter others from engaging in similar conduct;

202.   Award punitive damages against Sheriff Larry R. Smith, John Doe actors, and John Doe Policy makers in an amount to be shown at trial;

203.   All of the acts committed by the Defendants described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, and/or recklessly, and said acts meet all of the standards for imposition of punitive damages;

204.   These actions hereby entitle Plaintiffs to punitive/exemplary damages;

**B.  Actual Damages**

205.   Compensatory general damages against each Defendant, jointly and severally, in the amount proven at trial.

206.   As wrongful death beneficiaries, Plaintiffs seeks actual damages, both general and special, for the loss of their spouse, child, and father, Torry Lamont Newman, for the following specific elements of damages:

207.   Pecuniary Loss resulting from the death of Torry Lamont Newman including, but not limited to, the care, maintenance, support, services, education, advice, counsel, and reasonable contributions of a pecuniary value, loss of inheritance that the surviving family would have received from Torry Lamont Newman, had he lived.

208.   Termination of the Family Relationship: The positive benefits flowing from the love, support, companionship, and society that LaTosha Newman, Joyce Newman, NaTori Newman, Tevin Newman, and ShaTorry Newman, would in reasonable probability, have received from Torry Lamont Newman, had he lived.

**C.  Mental Anguish and Emotional Distress**

209.   Mental Anguish and Emotional Distress suffered by Torry Lamont Newman during the days in jail prior to his death. Mental anguish sustained by Torry Lamont Newman from the time of the incident until his death;

210.   Mental Anguish and Emotional Distress suffered by Torry Lamont Newman

during the days in jail prior to his death. Mental anguish sustained by Torry Lamont Newman from the time of the incident until his death;

211.   Mental Anguish and Emotional Distress suffered by LaTosha Newman, Joyce Newman, NaTori Newman, Tevin Newman, and ShaTorry Newman,: the surviving family as a result of the death of Torry Lamont Newman including, but not limited to, the emotional pain, torment, and suffering that Plaintiffs, would, in reasonable probability, experience from the death of Torry Lamont Newman.

### D.  Loss of Inheritance

212.   The earnings, if any, of the decedent in excess of the amount they would have used for the support of themselves and their families, and which in reasonable probability would have been added to their estates and left to Plaintiffs at their natural death had he lived.

### E.  Compensatory Damages

213.   Including, but not limited to funeral expenses; Compensatory general damages against each Defendant, jointly and severally, in the amount proven at trial.

### F.  Pain and Suffering

214.   Physical pain and suffering sustained by Torry Lamont Newman from the time of the incident until his death;

### G.  Reasonable and necessary medical expenses, Reasonable and necessary funeral and burial expenses.

215.   Reasonable and necessary medical expenses of Torry Lamont Newman from the time of the incident until the time of his death; and reasonable and necessary funeral and burial expenses.

### H.  Attorney's Fees

216. Plaintiffs are entitled to recover attorney's fees and costs under 42 U.S. C. 1983 and 1988 including reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs.

### I.  Use of Documents at Trial or Pretrial Proceedings

217. Plaintiffs intend to use at one or more pretrial proceedings and/or at trial all documents produced by Defendants in this case in response to written discovery requests, with initial and additional disclosures (and any supplements and or amendments to same), and in response to Public Information Act request(s).

### J.  Equitable Relief

218. Equitable relief, including, without limitation, that Smith County and Sheriff Larry R. Smith be made to apologize and to promulgate, adopt, train, maintain and enforce appropriate policies to prevent future instances of the type of misconduct described herein; Such other relief, including injunctive and/or declaratory relief, as the court may deem proper.

### K.  Additional Damages

219. Plaintiffs seek to recover all court costs, fees, expenses and expert fees. Pre and post judgment interest as permitted by law; and, such other relief, including injunctive and/or declaratory relief, as the court may deem proper.

## IX. JURY REQUEST

220.   Plaintiffs make a demand for a trial by jury as afforded by the United States Constitution.

## X. PRAYER

221. WHEREFORE, PREMISES CONSIDERED, Plaintiffs, Estate of Torry Lamont Newman, LaTosha Newman, Joyce Newman, NaTori Newman, Tevin Newman, and

ShaTorry Newman, Individually and as Heirs of Torry Lamont Newman, and respectfully pray that Defendants Smith County, Sheriff Larry Smith, Jailers Shoemaker, Vallejo-Robles, Vega, Velaquez, and Washington, John Doe Smith County Jailers 1-20, Turn Key Health Clinicians, PLLC, Turn Key Health Clinics, LLC, Defendants Dimaculanga and Ellis, and John Does Medical Providers 1-5, be summoned to appear and answer herein, and that upon a final hearing of this cause, that judgment be entered for the Plaintiffs and against Defendants, both jointly and severally, for all damages requested herein, together with pre-judgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which Plaintiffs may be entitled at law or in equity. Punish each individual Defendant, and deter others from engaging in similar conduct;

222. Plaintiffs assert that the death of Torry Lamont Newman was the result of government actors, Smith County Sheriff Larry R. Smith and Smith County and Jailers Shoemaker, Vallejo-Robles, Vega, Velaquez, and Washington, and John Doe Smith County Jailers 1-20, individually, and collectively caused the death and harm suffered was the result of Defendants' conduct motivated by evil motive or intent, or done recklessly or with callous indifference to the federally protected rights of Torry Lamont Newman, and hereby entitle Plaintiffs to punitive/exemplary damages.

223. Equitable relief, including, without limitation, that Smith County and Sheriff Larry R. Smith be made to apologize and to promulgate, adopt, train, maintain and enforce appropriate policies to prevent future instances of the type of misconduct described herein; Such other relief, including injunctive and/or declaratory relief, as the court may deem proper.

Respectfully submitted,

**CLARK │ VON PLONSKI │ ANDERSON**

By: /s/ Collen A. Clark
      **COLLEN A. CLARK**
      State Bar No. 04309100
      **JACOB L. von PLONSKI**
      State Bar No. 24098554
      **R. CONNOR BARBE**
      State Bar No. 24108598
      **LINDA LE**
      State Bar No. 24126312

3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
214-780-0500
214-780-0501 Facsimile
eservice@cvpalaw.com
jake@cvpalaw.com
connor@cvpalaw.com
linda@cvpalaw.com

**-AND-**

**MANESS LAW FIRM, PLLC**
By: /s/ Josh B. Maness
      **JOSH B. MANESS**
      State Bar No. 24046340

480 West Texas Avenue
Waskom, Texas 75692-9274
P: (903) 407-8455
F: (877) 320-5751
josh@joshmaness.com

-AND-

By: /s/ Charles W. Nichols
**CHARLES W. NICHOLS**
Texas Bar No 14994200
Email:  cnichols@charleswnicholslaw.com
617 E. Lacy St. Palestine, TX 75801
Tel. (903) 729-5104
Fax. (903) 729-0347

Admitted before the United States District Court,
Eastern District of Texas
Attorney for Plaintiffs

By:  /s/ Donald J. Larkin
**DONALD J. LARKIN**
Texas Bar No 24057702
Email:  donald@charleswnicholslaw.com
617 E. Lacy St. Palestine, TX 75801
Tel. (903) 729-5104
Fax. (903) 729-0347
Admitted before the United States District Court,
Eastern District of Texas
Attorney for Plaintiffs

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY**