UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:24-cv-00144

**Brian Newman et al.,**
*Plaintiffs,*

v.

**Smith County et al.,**
*Defendants.*

**O R D E R**

This lawsuit concerns the death of Torry Newman during his confinement in the Smith County Jail. Two of the defendants, Turn Key Health Clinics, LLC, and Turn Key Health Clinicians, PLLC, (the Turn Key defendants) filed motions to dismiss. Docs. 18, 19. The case was referred to a magistrate judge, who issued a report and recommendation to deny the motions to dismiss. Doc. 57.

Defendants filed objections primarily contending that plaintiffs failed to adequately plead facts of (1) a constitutional violation of deliberate indifference and (2) a conditions-of-confinement claim. Doc. 62. The court reviews the objected-to portions of a report and recommendation de novo. 28 U.S.C. § 636(b)(1). In conducting a de novo review, the court examines the entire record and makes an independent assessment under the law. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). For the reasons below, defendants' objections are overruled, and their motions to dismiss (Docs. 18, 19) are denied.

**I. Lumping together the Turn Key defendants**

Defendants object to the complaint's "lump[ing] together" all defendants without distinguishing their conduct. Doc. 62 at 4. They claim that plaintiffs engaged in "shotgun" style pleading by not distinguishing between Turn Key Health Clinics, LLC, and Turn Key Health Clinicians, PLLC. Doc. 19 at 9. Plaintiffs claim that discovery will allow plaintiffs to "glean the scope and terms

of these entities' responsibilities to Smith County and the inmates in its Jail." Doc. 22 at 6.

At the outset, "a plaintiff bringing a section 1983 action must specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). Defendants first cite *Murphy* in their motions to dismiss. Doc. 18 at 9; Doc. 19 at 9. But *Murphy* does not support dismissal. There, the Fifth Circuit reversed the district court's dismissal and remanded for discovery, holding that the plaintiff "would be able to adequately identify" the responsible defendants if given the opportunity. *Murphy*, 950 F.2d at 293.

Aside from *Murphy*, defendants cite no binding authority for their "lumping together" and "shotgun pleading" arguments. But the Fifth Circuit has once noted, without explicitly adopting, the Eleventh Circuit's prohibition against shotgun pleading. *Jones v. Grapeland Indep. Sch. Dist.*, No. 24-40194, 2024 WL 4490604, at *1 n.1 (5th Cir. Oct. 15, 2024) (unpublished) (explaining that shotgun pleading involves "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015))). The Fifth Circuit has also spoken out against group pleading and lumping defendants together when applying other legal frameworks, some with heightened pleading requirements. *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 364–65 (5th Cir. 2004) (noting that the group pleading doctrine conflicts with the heightened scienter requirement of the Private Securities Litigation Reform Act); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019) (holding similarly in the RICO context); *but see Crittindon v. LeBlanc*, 37 F.4th 177, 201 (5th Cir. 2022) (Oldham, J., dissenting) (criticizing the majority's silence on "which defendant knew what at what time" when denying qualified immunity in a § 1983 deliberate-indifference-claim context).

Rule 8 simply requires that defendants be given "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2). Some district courts in the Fifth Circuit have held that "lumping together" defendants is not enough to make a claim implausible and subject to Rule 12(b)(6) dismissal. For example, in *Texas v. Rising Eagle Capital Group LLC*, the court so held, reasoning that "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." No. 4:20-cv-02021, 2021 WL 10343470, at *2 (S.D. Tex. Sept. 27, 2021); *see also In re Taasera Licensing LLC, Pat. Litig.*, No. 2:22-cv-00468, 2023 WL 2716540, at *3 (E.D. Tex. Mar. 29, 2023) (finding that claims against "CrowdStrike, Inc.," and "CrowdStrike Holdings, Inc.," did not need to be differentiated at the pleading stage before the benefit of claim-construction discovery).

Other district courts outside of the circuit hold similarly. *See, e.g.*, *United States ex rel. Merritt v. Amedisys, Inc.*, No. 7:21-cv-00017, 2023 WL 5436347, at *6–7 (M.D. Ga. Aug. 23, 2023) (referring to "Amedisys, Inc. and Amedisys Georgia, L.L.C.," as "Amedisys" in a complaint "does not render the complaint deficient" when defendants are still "on notice of the claims asserted against them"); *Gamble v. PACCAR, Inc.*, No. 2:23-cv-02147, 2024 WL 838337, at *4 (W.D. Pa. Feb. 28, 2024) (rejecting a lumping-together argument when, in light of informational discrepancies, "[d]iscovery . . . will better enable Plaintiff to assess whether she has sued an extraneous corporate entity or two who can bear no liability"); *Intuitive Imaging Informatics, LLC v. Intuitive Surgical Operations, Inc.*, No. 2:23-cv-10593, 2024 WL 4404992, at *3 (C.D. Cal. Sept. 4, 2024) (noting that when defendants are "related entities" that "are represented by the same counsel," and when plaintiffs are "unlikely to have knowledge as to the corporate structure of these entities at this stage," lumping is unlikely to frustrate notice of claims to each defendant).

It is important to note that plaintiffs' complaint does not have one collective reference to the conduct of the "defendants"— plaintiffs clearly separate their claims against the Turn Key

defendants and the other defendants in this case. *See* Doc. 1 at 42. Plaintiffs do conflate the two Turn Key entities, consistently directing allegations towards "Turn Key Health Clinics and/or Turn Key Health Clinicians" or simply "Turn Key." *Id.* at 9, 19. But the court notes that, without the opportunity for further discovery, understanding the delineation between two entities that are related and similar in name is difficult.

Providing no clarification on their corporate structure, the Turn Key defendants filed nearly identical motions to dismiss that are submitted through the same counsel, cite the same cases, use the same language, and rehash the same arguments. Docs. 18, 19. They join in making the same objections to the report and recommendation. Doc. 62. On top of this, plaintiffs assert identical allegations against the Turn Key defendants. Therefore, both defendants have "notice of the specific claims against them." *Anderson v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 525, 528 (5th Cir. 2008); Fed. R. Civ. P. 8(a)(2).

Given that the claims against both Turn Key Health Clinics and Turn Key Health Clinicians are identical, like those in *Rising Eagle*, and that discovery is likely to clarify the contractual nature and division of policymaking responsibility between the two entities, the court finds that dismissal is not appropriate at this stage. Therefore, defendants' "lumping together" objection is overruled.

### II. Pleading *Monell* claims

Before considering defendants' other objections, the court finds it appropriate to clearly define the pleading standard for *Monell* claims.[1] To state a *Monell* claim, plaintiffs must allege that there is "(1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose 'moving force' is the policy or custom." *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir.

---

[1] Defendants do not object to a "lessened" pleading standard as to the policy and policymaker prongs of the *Monell* analysis. Doc. 62 at 3. But consideration of the correct pleading standard for *Monell* claims is necessary for a clear-error review of the magistrate judge's report.

2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Plaintiffs argued that "only minimal factual allegations" should be required at the motion-to-dismiss stage. Doc. 22 at 10. Defendants acknowledge that "some Fifth Circuit caselaw supports the imposition of a lessened pleading standard" when identifying policies and policymakers. Doc. 62 at 3 (citing no specific cases).

The case that plaintiffs, and the magistrate judge, cite on this issue is *Thomas v. City of Galveston*. 800 F. Supp. 2d 826 (S.D. Tex. 2011). The *Thomas* court noted that, at the motion-to-dismiss stage, plaintiffs "will generally not have access to" internal policies or training procedures without the opportunity for discovery. *Id.* at 842–43. It held that this relieves a plaintiff of his or her responsibility to proffer "specific facts that prove the existence of a policy" but still imposes an obligation to provide "more than boilerplate allegations." *Id.* at 844. The *Thomas* court repeated that the court may rely upon its "judicial experience and common sense" in adjudicating claims alleging *Monell* liability. *Id.* at 842–43 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

The Fifth Circuit has since issued a clear directive: "As we've said time and again, 'our precedents make clear that the *Twombly* standard'—not any lower-than-normal standard—'applies to municipal liability claims.'" *DeLeon v. Nueces Cnty.*, No. 23-40004, 2023 WL 4447023, at *1 n.4 (5th Cir. July 11, 2023) (unpublished) (quoting *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 284–85 (5th Cir. 2020)). *Ratliff* clarified that the pleading standards of *Twombly* and *Iqbal* govern *Monell* claims, and the court noted that for plaintiff to "plead a practice so persistent and widespread as to practically have the force of law, [plaintiff] must do more than describe the incident that gave rise to his injury." *Ratliff*, 948 F.3d at 285 (cleaned up).

This Fifth Circuit precedent casts doubt on the assertions in *Thomas*. For example, *Thomas* held that "not demanding specific facts that prove the existence of a policy" meets the post-*Iqbal*

- 5 -

pleading standard. 800 F. Supp. 2d at 844. But the Fifth Circuit has since required "specific past instances to allege municipal liability" in the absence of an alleged written custom or policy. *Bond v. Nueces Cnty.*, No. 20-40050, 2022 WL 4595000, at *5 (5th Cir. Sept. 30, 2022) (unpublished) (first citing *Ratliff*, 948 F.3d at 285; and then citing *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)). These instances must be pleaded with "specificity" and "similarity" to each other. *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017).

Therefore, this court will not extend the magistrate judge's citations of *Thomas* and the report's agreement with "courts [that] have held that such allegations need not specifically set out the policy at the motion to dismiss stage." Doc. 57 at 15. If a plaintiff is alleging the existence of an official custom or policy, he must offer more than boilerplate language that such a policy exists. If a plaintiff is alleging "a persistent, widespread practice . . . so common and well-settled as to constitute a custom that fairly represents municipal policy," *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001), he must allege with specificity past instances of that practice that extend beyond "the incident that gave rise to [the] injury," *Ratliff*, 948 F.3d at 285.

But the court agrees with the magistrate judge's ultimate conclusion that the allegations in plaintiffs' complaint "are sufficient to move their claims across the line from conceivable to plausible." Doc. 57 at 15. Plaintiffs have pleaded many facts alleging the existence of a policy. First, plaintiffs have alleged a media statement by the Smith County Sheriff that the county "cut down on the number of inmates that go to the emergency room" through the signing of a contract with Turn Key, marking a policy shift toward avoiding emergency room visits to save money. Doc. 1 at 35. Second, plaintiffs cite an inspection of the jail that "noted several deficiencies . . . which revealed the jail failed to comply with the jail standards for supervision of inmates." *Id.* at 38. This inspection report noted that the jail "failed to document life safety training for 34 staff members," indicating that medical

deficiencies existed *before* Newman's experience in the Smith County Jail and that a pattern or practice plausibly might have existed. Doc. 1-8 at 1.

Third, "municipal policy" may also be demonstrated in the form of plaintiffs' failure-to-train claim, as long as "the failure is closely related to the ultimate injury and not just attributable to a particular officer's shortcomings." *Garza v. City of Donna*, 922 F.3d 626, 637 (5th Cir. 2019) (quotation marks omitted). In addition to the inspection report, plaintiffs note that the jailers "had not received the required training to heed to calls for a doctor or a life-threatening critical illness." Doc. 1 at 25. They allege specific deficiencies that cannot be attributed to a single shortcoming, noting that the staff members "are not instructed on differentiating between a mental health condition, asthma conditions," and other conditions. *Id.* at 32–33.

Plaintiffs are, however, given leniency in identifying a specific policymaker. Because the identity of the policymaker is a question of state law and courts should not grant motions to dismiss § 1983 cases "for imperfect statement of the legal theory," the Fifth Circuit has held that "courts should not grant motions to dismiss for failing to plead the specific identity of the policymaker." *Groden v. City of Dallas*, 826 F.3d 280, 284–85 (5th Cir. 2016) (first citing *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014); and then citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988)). Plaintiffs simply have to plead facts that "establish that the challenged policy was promulgated or ratified by the city's policymaker." *Id.* at 285. These cases reinforce this court's conclusion that it was not a fatal pleading error to fail to identify *which* Turn Key entity acted as the precise policymaker here. The court thus accepts the magistrate judge's conclusion that the Turn Key defendants, acting as private, for-profit medical-care entities, acted as policymakers for the purposes of *Monell* liability. Doc. 57 at 14.

With this in mind, the standard of *Twombly* and *Iqbal*—neither lessened nor heightened—applies to plaintiffs' claims. The examples above prove that plaintiffs have alleged enough to establish

plausible *Monell* claims under the *Twombly* and *Iqbal* standard. The court keeps in mind the purpose of the standard: to "satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests," *Twombly*, 550 U.S. at 555 n.3, and to "permit the court to infer more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679. The court will continue to address defendants' substantive objections with this standard in mind.

### III. Deliberate-indifference objections

The court first addresses defendants' objections with regard to plaintiffs' deliberate-indifference claims. Plaintiffs' § 1983 claims against defendants, who are for-profit entities that act under a contract with Smith County, are analyzed under the *Monell* framework. Doc. 57 at 14.

In the episodic-acts-or-omissions context under *Monell*, plaintiffs first have to prove that prison officials acted with "*subjective deliberate indifference*" and violated constitutional rights. *Sanchez v. Young Cnty.*, 866 F.3d 274, 280 (5th Cir. 2017) (emphasis added). Then, they have to show that the acts "resulted from a municipal policy or custom adopted with *objective indifference* to the detainee's constitutional rights." *Id.* (emphasis added); *see also Hare v. City of Corinth*, 74 F.3d 633, 649 n.4 (5th Cir. 1996) (noting a prisoner first "must establish that an official acted with *subjective* deliberate indifference" in proving a constitutional violation, and to hold a municipality accountable for that violation, they must show that the "employee's act resulted from a municipal policy or custom adopted or maintained with *objective* deliberate indifference").

Defendants object only to the magistrate judge's conclusion that plaintiffs sufficiently alleged a constitutional violation. Doc. 62 at 3. Therefore, they object only to a plausible conclusion of subjective deliberate indifference by prison staff.

At the center of their objections, defendants claim that no constitutional violation occurred because plaintiffs alleged that the decedent was "provided medication while he was housed at the

- 8 -

Smith County Jail and he encountered medical providers." *Id.* For plaintiffs to allege that a prison official acted with subjective deliberate indifference, they must show that the official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). But "a difference in opinion as to the appropriate method of treatment under the circumstances" is not enough to show deliberate indifference. *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999). A prisoner's "[m]ere disagreement with medical judgments or treatment," or "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice" fails to meet the standard. *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022) (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).

The Fifth Circuit has held that a failure to prescribe necessary medications or follow necessary medical procedures can constitute deliberate indifference. For example, in *Easter v. Powell*, the court held that a failure "to follow a prescribed course of treatment that called for the administration of nitroglycerin when [plaintiff] experienced chest pain" met the deliberate-indifference threshold and was more than "mere disagreement." 467 F.3d 459, 464 (5th Cir. 2006); *see also Lawson v. Dallas Cnty.*, 286 F.3d 257, 263–64 (5th Cir. 2002) (jail medics' treatment and failure to follow doctors' recommendations, which led to decubitus ulcers on a disabled inmate, was subjectively deliberately indifferent, and the county was liable for multiple policies indicating objective indifference to serious medical needs).

Here, plaintiffs allege that Turn Key medical personnel knew that Newman had a "history of asthma and relied on" certain prescribed medications. Doc. 1 at 24. They add that medical staff members did not review his chart or medical history, despite the knowledge that he was suffering from asthma attacks. *Id.* at 32. Plaintiffs allege that jail staff "heard his pleas for medication and discomfort during the last few hours of his life as he struggled with

asthma." *Id.* at 18. They allege that staff "allowed him to suffocate" a few feet away from a fully staffed booking desk, and individuals at the desk "failed . . . to provide adequate medical treatment" or seek emergency care. *Id.* When an individual was finally sent to check on Newman, he was cold to the touch. *Id.* at 26.

Defendants point out that Newman was provided *some* medication (amlodipine and metoprolol), which is evident in plaintiffs' complaint. *Id.* at 27. But these medications, plaintiffs allege, were to "manage his hypertension." *Id.* at 10. Notably, the medications that plaintiffs allege were prescribed to treat Newman's chronic asthma (albuterol sulfate and budesonide and formoterol fumarate dihydrate inhalers) were not given to Newman in the jail. *Id.* at 10, 27. Not long after entering the jail, Newman passed away from complications associated with asthma. *Id.* at 27. Plaintiffs allege that the medications provided to him were inadequate to treat Newman's "chronic medical conditions, including shortness of breath, heavy chest pain, and disorientation." *Id.* at 29.

Considering the above, defendants' arguments that Newman was provided "*some* medication" are unpersuasive. Doc. 18 at 15. Providing treatment for one chronic condition and fully ignoring another chronic condition cannot be reduced to a "disagreement with medical judgments or treatment." *Davis*, 35 F.4th at 963. Rather, plaintiffs' allegations make plausible a conclusion that defendants exhibited a "wanton disregard for [Newman's] serious medical needs"—namely, his chronic and severe asthma. *Domino*, 239 F.3d at 756. Plaintiffs' allegations thus show a subjective deliberate indifference by prison officials, and plaintiffs plausibly allege a constitutional violation.

Other allegations in plaintiffs' complaint support this conclusion. They allege that prison staff "failed and refused to treat" Newman's asthma and his resulting complications by failing to supervise him and to conduct the required exams. Doc 1 at 27, 29, 31; *see Carlucci v. Chapa*, 884 F.3d 534 (5th Cir. 2018) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)) ("A delay in medical treatment that results in substantial harm can constitute

deliberate indifference."). They also allege that prison staff, sitting a mere ten feet away, ignored his pleas for help as he was struggling to breathe and refused to transfer him to a local hospital. Doc. 1 at 18; *see Fielder v. Bosshard*, 590 F.2d 105, 108 (5th Cir. 1979) (finding deliberate indifference in a "cold hearted, casual unwillingness" to provide medical help when the prisoner had a history of medical problems, medical attention was needed, and inattention resulted in the prisoner's death). These allegations support the finding that prison officials were subjectively deliberately indifferent to Newman's needs. Therefore, the court overrules defendants' objections that plaintiffs did not allege enough to show an underlying constitutional violation.

### IV. Conditions-of-confinement objections

Finally, the court addresses defendants' conditions-of-confinement objections. Defendants argue plaintiffs failed to adequately plead facts sufficient to support a claim of municipal liability based on a conditions-of-confinement theory. Doc. 62. Specifically, defendants argue that the alleged failures are "failures by individuals" instead of failures of an "explicit policy or restriction" and that these failures fit better under an episodic-acts-or-omissions claim. *Id.* at 4.

To state a claim under a conditions-of-confinement theory, a plaintiff must point to "a rule or restriction" at the jail or "otherwise demonstrate the existence of an identifiable intended condition or practice." *Hare*, 74 F.3d at 645. Though a condition of confinement "is usually the manifestation of an explicit policy or restriction: the number of bunks per cell, mail privileges, disciplinary segregation," it can also be "an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 645). The pleadings must make plausible "a pervasive pattern of serious deficiencies." *Id.* at 454. "[I]solated examples of illness, injury, or even death, standing alone,

cannot prove that conditions of confinement are constitutionally inadequate." *Id.*

In *Shepherd*, the court found sufficient indicia of a conditions-of-confinement claim where a jail's "evaluation, monitoring, and treatment of inmates with chronic illness was . . . grossly inadequate" due to deficient procedures and understaffing at the jail. *Id.* at 453. That plaintiff provided evidence (at the summary-judgment stage) of "inadequate treatment he received in a series of interactions with the jail's medical system" that led to the suffered harm, involving more than "one individual's misconduct." *Id.* at 452–53. The Fifth Circuit held that, considering affidavits of employees, evaluative reports, and documentary evidence, the court could "reasonably infer a *de facto* jail policy of failing properly to treat inmates with chronic illnesses." *Id.* at 453.

Plaintiffs' complaint here includes a clear allegation of the condition or practice that is being challenged—a failure to implement "the policies, procedures, and practices necessary to provide constitutionally adequate mental health treatment and medical services." Doc. 1 at 17–18. Supporting this claim are numerous factual allegations that, from the moment Newman arrived at the jail, the jail exhibited a practice of ignoring Newman's medical needs. Plaintiffs allege that "medical staff members failed to administer proper mental health or physical evaluations," that they "failed to adequately review Mr. Newman's chart," and that no member of the jail "sought his medical history." *Id.* at 31–32. As discussed, medical officials withheld certain prescribed medications. *Id.* at 32.

Finally, plaintiffs allege a failure to "implement jail policies . . . that adequately address[] the obvious and known health and safety risks to inmates with serious chronic medical conditions," noting a likelihood of inmates with chronic conditions to "experience severe symptoms, substantial harm, and death" from the withholding of medications and proper treatment. *Id.* at 33. As mentioned above, they claim the contract with Turn Key established a policy of "diverting emergency care situations as a cost-

savings measure." *Id.* at 35. Finally, they cite a Texas Jail Standards Commission report to allege that, even before Newman's arrival at the jail, the jail failed to comply with supervision standards and failed to complete screening forms for medical impairments. *Id.* at 38. They add that the jail was inadequately staffed. *Id.* at 25. Supplemented by the many facts above, plaintiffs conclude that Turn Key "engaged in an ongoing practice of ignoring . . . medical needs." *Id.* at 37. And Newman's own series of interactions with the jail's medical system exhibit this pattern of deficient medical care, from Newman's initial intake, where the jail failed to review his medical history, to Newman's death, where the jail failed to seek emergency care.

Though plaintiffs primarily "seek damages for the harm to a single detainee, . . . the alleged cause of the harm is the broader 'conditions, practices, rules, or restrictions'" that Newman encountered at the jail. *Cope v. Coleman Cnty.*, No. 23-10414, 2024 WL 3177781, at *9 (5th Cir. June 26, 2024) (unpublished), *cert. denied*, No. 24-573, 2025 WL 76495 (U.S. Jan. 13, 2025). The court cannot conclude, in light of these allegations, that plaintiffs have failed to apprise defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. These factual considerations together allege enough to make plausible a "pervasive pattern of serious deficiencies" in providing constitutionally adequate medical care. *See Shepherd*, 591 F.3d at 454.

Other district courts in the Fifth Circuit have held similarly. *See, e.g.*, *Palo v. Dallas Cnty.*, No. 3:05-cv-00527, 2007 WL 2140590, at *4–5 (N.D. Tex. July 26, 2007) (finding conditions-of-confinement pleadings sufficient where plaintiff "[did] not focus solely on the acts or omission of the staff on duty at the Jail . . . [but] also attack[ed] the Jail medical care system itself"); *Loftis v. Dallas Cnty.*, No. 3:10-cv-00116, 2011 WL 4090962, at*5 (N.D. Tex. Sept. 14, 2011) (finding plaintiff adequately pleaded a conditions-of-confinement claim when he alleged "injuries [that] were *caused* by the Dallas County Jail's unconstitutional medical care

*policies*" even though his pleadings may be "read to implicate the acts of individuals").

Therefore, the court agrees with the magistrate judge that plaintiffs have met their pleading burden to state a valid conditions-of-confinement claim. Accordingly, defendants' objections regarding plaintiffs' conditions-of-confinement claim are overruled.

## V.  Conclusion

Having reviewed the magistrate judge's report and the Turn Key defendants' objections de novo, the court overrules the defendants' objections and accepts the findings and recommendations of the magistrate judge's report. It is accordingly ordered that the motions to dismiss of the defendants Turn Key Health Clinics, LLC, (Doc. 18) and Turn Key Health Clinicians, LLC, (Doc. 19) are denied.

*So ordered by the court on March 25, 2025.*

J. CAMPBELL BARKER
United States District Judge